JAKE ROHRBACH, Appellee, v. JOHN HAMMILL, Appellant.

**Pleadings:** LEGAL CONCLUSIONS.  Allegations pleading merely legal conclusions should be stricken on motion.

**Same:** AMENDMENT: CHANGE FROM EQUITY TO LAW.  Where the defendant always denied plaintiff's right to specific performance of his contract, and he was not induced to change his position relative to the subject matter of the suit by the commencement of an action for performance, plaintiff was entitled to change his action to one for breach of the contract, by the filing of a substituted petition.

**Real property:** CONTRACTS: STATUTE OF FRAUDS: PAYMENT: EVIDENCE.  Damages may be recovered for the breach of an oral contract to convey land, where the contract had become enforceable by

payment of part of the purchase price. And the payment may be of any thing of value given and accepted as part of the price; as a personal check. In the present case the evidence is held to support a finding that plaintiff's check was given and received with the understanding that it constituted a payment on the price of the land in controversy.

**Payment by check:** CUSTOM: JUDICIAL NOTICE. Courts will take judicial notice that it is the usual and ordinary custom to use personal checks in the transaction of business of any magnitude. And while ordinarily a check is only conditional payment of the obligation for which the same is given, it may by agreement of the parties constitute absolute payment; and this agreement need not be in express words or writing, but it may be shown by the circumstances and conduct of the parties.

**Breach of land contract:** MEASURE OF DAMAGES. The measure of damages for defendant's breach of contract to purchase land for plaintiff by purchasing it in his own name, is the difference between the price paid by defendant and its value when the contract was breached and suit brought.

*Appeal from Hancock District Court.*—HON. J. J. CLARK, Judge.

FRIDAY, NOVEMBER 14, 1913.

ACTION to recover damages for breach of contract in the sale of land.—*Affirmed.*

*John Hammill* and *E. A. & W. H. Morling,* for appellant.

*Senneff & Bliss,* for appellee.

GAYNOR, J.—This cause was originally commenced in equity. The petition was filed February 17, 1911. The cause of action was stated in four counts.

The first count alleged that the plaintiff verbally employed the defendant to negotiate with one Treloar for the purchase of the premises in controversy for and in behalf of himself and the defendant, each to pay one-half of the pur-

chase price; that the defendant purchased the premises, and
the plaintiff was ready, able, and willing to pay one-half of
the purchase price; that the defendant refused to recognize
the plaintiff's rights therein.

The second count alleged practically the same matters,
except that it contained the further allegation that the plain-
tiff, on February 1, 1911, had paid the defendant $500 by
check; one-half of the cash payment required to be paid in
the purchase of said land, which check was returned to the
plaintiff on February 4, 1911, with a letter, in which the de-
fendant refused to permit the plaintiff to become associated
with him in the purchase.

The third count was predicated on the thought that they
became partners in the purchase of the land.

The fourth count proceeded on the theory that the plaintiff
had purchased of the defendant an undivided half interest in
the real estate. In this petition the plaintiff prayed for a
decree fixing the rights of the parties in the premises, and
determining that plaintiff and defendant had an equal inter-
est in the contract between the defendant and Treloar, and
that the defendant be required to recognize the rights of the
plaintiff in said contract, and be required to execute an instru-
ment of conveyance, showing plaintiff to be the owner of half
interest in said real estate, and that, in the event defendant
was unable to perform, plaintiff have judgment for damages.

On the 23d day of May, 1911, the plaintiff filed a sub-
stituted petition in law also in four counts, only two counts
of which remained for submission and were submitted to the
jury.

In the second count of plaintiff's substituted petition at
law, he alleged: That in the fall of 1910, he verbally em-
ployed defendant to purchase for him one-half interest in the
land in controversy. That the agreement was verbal, and was
to this effect: That the defendant should negotiate with the
owner, Treloar, and make a contract of purchase in behalf
of himself and the plaintiff. That each would pay one-half

of the purchase price, and each to have an undivided half interest in the land purchased. That the land should be purchased for not to exceed $90 an acre. That, for all deferred payments a mortgage should be executed jointly by the plaintiff and defendant, and the deed was to be taken jointly by them. That thereafter the defendant purchased the real estate from Treloar by written contract, and, contrary to the agreement with plaintiff, caused his own name to be inserted in the contract as sole purchaser. That the defendant paid $1,000 cash, the land to be conveyed subject to certain incumbrances; the purchase price being less than $90 an acre. That thereafter the defendant closed the deal with Treloar, and caused a deed to be executed to himself as the sole purchaser. That the defendant refused to recognize the rights of the plaintiff in the premises. That the plaintiff was and is ready, able, and willing to pay his half of the purchase price in accordance with the terms of the contract. That the defendant now refuses to recognize the rights of the plaintiff in the premises. That, subsequent to the making of said contract, and prior to the execution of the deed, the plaintiff, for the purpose of carrying out his part of the agreement with the defendant, and for the purpose of paying his part of the purchase price, did, on the 1st day of February, 1911, pay to the defendant $500 in the form of a check as follows:

"Britt, Iowa, Feb. 2, 1911. Pay to the order of John Hammill, $500.00 (five hundred and no/100 dollars), to the Commercial Bank, Britt, Iowa. [Signed] Jake Rohrbach.

"Earnest Money on Treloar Farm."

That said check was made and delivered to defendant as payment of $500, being one-half of the cash payment, and was accepted by the defendant as so much cash, and as a part payment on said real estate.

The fourth count of plaintiff's substituted petition recites practically the same facts, but claims that, after defendant had purchased the land from Treloar, the plaintiff, on the 1st day of February, 1911, purchased a half interest in said

land from the defendant, and paid him $500 as part of the purchase price, as before stated; that defendant received and accepted the check as part payment; that plaintiff has been ready, able and willing at all times to perform his part of the agreement, but that the defendant returned the check, and refused absolutely to carry out his part of the agreement. Wherefore the plaintiff says he has been damaged, and asks judgment for the amount of his damage.

This is a sufficient statement of the issues to enable us to have a clear understanding of the errors complained of.

Thereafter the cause was tried to a jury. There was a verdict for the plaintiff, and, judgment being entered on the verdict, the defendant appeals.

The defendant, in his answer to plaintiff's substituted petition, admitted that he purchased the land in controversy from Treloar, and took the contract and deed in his own name; admits that he has always denied, and does now deny, that plaintiff had any right or interest in the premises; denies that he had any verbal agreement or otherwise with the plaintiff for the purchase of said land, as set out by plaintiff in his petition; denies every other allegation of the petition.

In count 2 of his answer, as a further defense, he alleged that the verbal agreement set out in the substituted petition is wholly void, and of no effect under the statute of frauds, and that verbal evidence of said contract of agreement cannot be admitted or permitted, and that the whole alleged agreement is void and of no effect. This part of the answer, in count 2, was stricken out on motion of the plaintiff. This was the first error assigned. As this was the pleading simply of a legal conclusion, and not of a substantive fact, the same was properly stricken out.

1. PLEADINGS: legal conclusions.

The action of the court, in permitting the plaintiff to change from equity to law is assigned as error. It must be

conceded that the plaintiff, in the first place, might have

**2. SAME: amendment: change from equity to law.** brought his action at law. The facts upon which the equity and the law action are founded are substantially the same. The difference practically is in the prayer for relief. The theory seems to be that the plaintiff had elected, by suing in equity, to claim a half interest in the land, and therefore could not afterwards so change his cause of action as to repudiate that election, and sue to recover damages as for a breach of contract, but it will be borne in mind that the defendant in his answer alleges that he has always denied plaintiff's right to any interest in the land.

The defendant does now and in his answer says he has always denied the plaintiff's right in equity to have a specific performance of the contract alleged to have been entered into between him and the plaintiff. By commencing the action in equity, the plaintiff did not induce the defendant to change his position or his attitude in relation to the subject-matter of this suit. That the party has a right to change from law to equity, where he has one remedy in law and one in equity, and may pursue either at his election, and to change his cause of action from one to the other, see *Barnes v. Hekla Fire Ins. Co.,* 75 Iowa, 14, second division of opinion, in which it is said:

The defendant contends that, as the plaintiff elected to bring an action at law on the policy, he cannot, by amended pleadings, ask a reformation of the policy, and have the case tried in equity. Conceding that the plaintiff had knowledge of the fact that the defendant asserted that it would rely on the defense it did, still we think he could bring an action at law on the policy, and ascertain certainly whether defendant would plead such defense or not, before resorting to equity. . . . Under the statute in relation to amendments, we have no hesitation in holding that a party is not estopped by bringing an action at law from amending his pleadings before the case has finally been submitted to the court, so as to change it into an action in equity. We feel confident that the universal practice is in accord with this view.

See, also, *Newman v. Covenant Mut. Ins. Ass'n,* 76 Iowa, 56 ; also *Cox Shoe Co. v. Adams,* 105 Iowa, 402, second division of opinion.   We think the court did not err in permitting the plaintiff to file the substituted petition and pursue his action at law.

It is next contended that the court erred in submitting to the jury the question as to whether there was, or was not, an expressed oral agreement between the parties, that the

3. REAL PROP-
ERTY : con-
tracts : statute
of frauds :
payment : evi-
dence.

defendant should accept, and that he did accept, a check for $500 for and instead of money, as a part payment of the purchase money, and this is directed to the fifth, sixth,

and seventh instructions given by the court, in which the court said to the jury, in substance, that, if they found that, in pursuance of the verbal agreement between the plaintiff and defendant, the plaintiff made and delivered to the defendant the check, hereinbefore referred to, and it was verbally agreed between them that the defendant should receive and accept the check as for payment of part of the purchase, and that the defendant did receive and accept the check as a part of the purchase price, then the plaintiff would be entitled to recover.   Section 4625 of the Code provides : "Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or his authorized agent."   Subdivision 4 of which provides : "Those for the creation or transfer of any interest in lands, except leases for a term not exceeding one year."   Section 4626 provides that the fourth subdivision of Section 4625 does not apply where the purchase money, or any portion thereof, has been received by the vendor.   It is contended by the appellant that the receipt of a check, unaccompanied by such an express agreement as discharges *pro tanto* the original indebtedness for the purchase money is not a receipt of any of the purchase money.   From this statute it is apparent that no evidence, unless it be in writing and signed by the party charged, is

competent for the creation or transfer of any interest in lands, except where the purchase money, or some portion thereof, has been received by the vendor.

The first question arising is, What is meant by the words "purchase money"? Parol evidence of the contract is competent to establish the agreement, where it is shown that any portion of the purchase money is paid. In *Devin v. Himer,* 29 Iowa, 297, this court had occasion to define the term "purchase money" as used in the statute, and there defined it to mean the consideration agreed to be paid for the thing purchased. So, in treating this case, we will consider the words "purchase money," as used in the statute, as synonymous with the word consideration, and the consideration may be anything of value delivered by the one party to the other, which is accepted as a part of the purchase price of the thing sold. See *Mitchell v. Colby,* 95 Iowa, 202; *Peake v. Conlan,* 43 Iowa, 297. In *Daily v. Minnick,* 117 Iowa, 563, a case in which an oral agreement to convey land was sustained upon a showing that the consideration was allowing the grantor to name a child, and the child was named according to his wishes and continued to bear his name down to the trial, and it was held that there was such a payment of the consideration as took the case out of the statute of frauds, since the naming of the child and the bearing of the name constituted a payment of the purchase price of the land within the exception hereinbefore reeferred to. In *Harlan v. Harlan,* 102 Iowa, 701, this court said: "The term 'purchase money' means the consideration paid, and may be property or labor performed." We do not understand appellant to controvert these authorities, but his contention is that a check on a bank is not payment, unless by express contract between the parties it is so received; that there is no presumption that a creditor takes a check in absolute payment, arising from the mere fact that he accepts it from the debtor. We understand the contention of appellant to be that there must be an actual payment of a part of the consideration before the contract is taken out of the statute of

frauds; that the delivery of a check is not a payment in itself and of itself until the same is paid, until the consideration, evidenced by the check, has passed into the hands of the vendor. This proposition is supported by authority, but it is also true that parties may agree that a check be taken as absolute payment of the debt, or in discharge of a portion of the consideration agreed to be paid, and it will then have the effect of a payment, taking it out of the statute of frauds. This was the very question submitted to the jury. There is evidence in the record upon which the jury might find that, at the time this check was given, both parties were in a mood to make a binding contract; that the purpose of plaintiff, in delivering the check, was to make a payment upon the contract of that much of the purchase price as was so received and accepted by the defendant. If there was evidence to support this theory the court did not err in submitting it to the jury.

The evidence bearing on this question as given by the plaintiff is substantially as follows: ''I called on Mr. Hammill, the defendant, in his room at the Savery. When I opened the door, I said, 'John, what is the matter with you?' I said, 'John, I own a half interest in this land.' He answered, 'I never for a moment thought you didn't.' Mr. Hammill then produced the contract and asked the plaintiff to read it. After plaintiff had read the contract he said to defendant, 'This is perfectly satisfactory,' and I said to the defendant, 'How much do I owe you?' He said, '$500.' I gave Mr. Treloar $1,000. I said, 'Isn't there something else? Some little expense that I owe you for?' and he said, 'No. Write out a check for $500.00.' I wrote a check and gave it to him. After I had delivered the check he said, 'If we adjourn (meaning the Legislature) I will bring you a copy of the contract, but if we don't, my clerk will send you one.' I said, 'It is all satisfactory, and I will have the money on the day when the papers are ready to be made out.' The defendant took the check and looked at it when I handed it to him. He read it over. He made no objection to the check.

Didn't say he wanted cash. He picked up the check and the contract. There was nothing said as to what he would do with the check. He found no fault with the check at all." It appears that plaintiff had money in the bank on which the check was drawn to pay the check when presented.

A check, such as the one in question, is a negotiable instrument. It is a thing of value. It may be the subject of larceny. Checks are in common use, and pass from hand to hand. It is the usual and ordinary way of transacting business of any magnitude, and courts take judicial notice of such custom. Courts ought not to assume ignorance of that which is known to all men. The subject here under discussion is considered in *Groomer v. McMillan*, 143 Mo. App. 612 (128 S. W. 285) ; *Griffin v. Erskine*, 131 Iowa, 444.

**4. Payment by check: custom: judicial notice.**

The case of *Conde v. Dreisam, Gold Min. & Mill Co.*, 3 Cal. App. 588 (86 Pac. 828), we think states correctly the rule as applied to cases of this kind as follows: "It is further claimed that a draft or check is only conditional, and not absolute, payment of the debt for which it is given, and does not extinguish the debt, unless it is expressly agreed that it shall constitute payment. This is undoubtedly the rule in this state. *Comptoir D'Escompte v. Dresbach*, 78 Cal. 15 (20 Pac. 28) ; *Dingley v. McDonald*, 124 Cal. 90 (56 Pac. 790). But the purpose of the rule is the protection of the creditor, who, if the check be dishonored, may still recover from his debtor. It was said in *Blair v. Wilson*, 28 Grat. (Va.) 165 : 'Ordinarily it is only a means of payment, and the debt will not be extinguished unless the check be paid, or unless loss be sustained by the drawer in consequence of the laches of the holder, in which case the debt will be discharged in proportion to the loss sustained. If the check be not paid, and the payee is without fault, his right of action against the drawer for the debt, which has been merely suspended by the giving of the check, revives, and he may have recourse to the drawer, either upon the debt or upon the check

at his option.' Mr. Benjamin thus states the rule: 'A check is accepted as a particular form of cash payment, and, if dishonored, the vendor may resort to his original claim, on the ground that there has been a defeasance of the condition on which it was taken.' Benjamin on Sales (7th Ed.) pages 755, 772. We do not, however, understand the rule to require that there should be express words or writing of the parties agreeing that the check should be absolute payment. The circumstances and the conduct of the parties taken together may show an express understanding that the check is taken in satisfaction of the debt, or estop the creditor from claiming the contrary. As here, for example, the check was sent for the express purpose of payment, and was retained under circumstances implying that it was so accepted. It has been held that unreasonable delay in returning a check may make it equal to payment.''

We do not hold that the delivery and acceptance of the check in all cases discharges the original debt *pro tanto,* but we do hold that a check may be delivered and received under such circumstances, and that the jury might well be justified in finding that, in the particular case, it was received as a partial payment of the consideration involved in the transaction, and here the relationship of the parties, the purpose for which the check was given and received, what was said and done at the time of the transaction, the words indorsed upon the check at the time of its delivery, the letter written by the defendant subsequently were sufficient to sustain a finding on the part of the jury that the check was given and received in part payment of the purchase price of the land in question. The fact that the check was subsequently returned does not tend to negative this fact. Any property delivered in part payment of the consideration might be returned by the party receiving it, and therefore, with equal force, might he claim that the consideration was not paid. We do not think the court erred in submitting this question to the jury, and we think the verdict of the jury has support in the evidence.

It is next urged that the court erred in instructing the jury that the measure of damage was the difference, if any, between the amount of the purchase, or contract price paid, or agreed to be paid, by the defendant to Treloar, together with expenses and commissions paid by him to the agent, if any, and the fair and reasonable market value of the land in February, 1911. We are satisfied that this instruction presented a fair way for determining plaintiff's loss by reason of defendant's failure to perform his part of the contract, and is not subject to the criticisms urged against it in view of the record which has been made.

5. BREACH OF LAND CONTRACT: measure of damages.

We find no error in the record, and the cause is *Affirmed*.

WEAVER, C. J., and LADD and WITHROW, JJ., concurring.