## Schock v. Berry, Appellant.

*Real estate—Brokers—Settlement—Loss of sale.*

In an action against a real estate broker to recover damages, arising out of a failure to obtain a conveyance to real estate, where it is alleged that the broker failed to attend the meeting of the parties at the time fixed for settlement and delivery of the deed, judgment for the plaintiff will be reversed where the evidence shows that the grantors, on the day in question, were not in a position to convey a title free and clear of encumbrance.   If at the only time the grantors were ready to tender a conveyance of the property, the title to the lot was still encumbered, they were not in a situation where they could allege performance, in which case it could not be successfully contended that the defendant was in default.

Argued October 20, 1919.   Appeal, No. 177, Oct. T., 1919, by defendant, from judgment of Municipal Court of Philadelphia, Feb. T., 1918, No. 148, on verdict for plaintiff in the case of Charles Schock v. Ernest Berry. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and KELLER, JJ.   Reversed.

Assumpsit for breach of contract.   Before CRANE, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $300, and judgment thereon. Defendant appealed.

*Errors assigned* were the charge of the court and in refusing binding instructions for the plaintiff.

*Frederick A. Sobernheimer,* for appellant.

*Morris Dos Passos,* for appellee.

OPINION BY HENDERSON, J., February 28, 1920:

The defendant is a real estate broker, who, as alleged by the plaintiff, was employed to procure the sale to the latter of a lot located on Seville street in Philadelphia, owned by Mrs. Snyder. Pursuant to said employment, the defendant procured an article of agreement from Mrs. Snyder and her husband for the sale of the premises to one William A. Powers, whose name was used in the contract at the instance of the plaintiff; the explanation for which as given by the latter was that he had had a conversation with Mr. Snyder and offered him a smaller sum than $1,000 which he then proposed to pay and that he was "kind of ashamed to go back to Mr. Snyder after offering him lower money, and he therefore used his brother-in-law as a 'straw man.'" The agreement was signed by the parties and a down-payment of $50 made. It was provided in the agreement that conveyance should be made free and clear of all encumbrances and easements; possession to be given October 2, 1917. The title was to be insured by the Manayunk Trust Company or any other reputable title insurance company; settlement to be made at the office of the Manayunk Trust Company. The parties bound themselves for the faithful performance of the agreement within 60 days from the date thereof; time to be of the essence of the agreement unless extended by mutual consent endorsed on the contract. The plaintiff alleges the defendant failed to attend to the settlement by reason whereof the vendors refused to convey and he was therefore unable to acquire the property. Evidence was admitted by the court to show the market value of the property and the trial judge instructed the jury that if the defendant was guilty of a breach of his contract, the plaintiff was entitled to recover the differ-

ence between the contract price and that shown to be the selling value of the property at the time. The defendant asserted that he was not employed by the plaintiff, but was acting for the owner of the property through another broker, but the jury having found in favor of the plaintiff, it must be assumed the defendant was acting for him in the negotiation. Admitting this to be the relation of the parties, the burden was on the plaintiff to show that he lost the advantage of his contract with Mrs. Snyder through some violation of the defendant's obligation to him. It is conceded there was not a meeting for settlement at the time stipulated in the contract —that date was August 25, 1917. The fund which the plaintiff proposed to use in payment of the purchase money was invested in a building and loan association and he could not get it until the first of the month. This was not done until the 19th of September; the defendant having previously thereto informed him that Mrs. Snyder wanted the contract closed and that he must get the money to carry it through. Mrs. Snyder's broker testified that he arranged for a settlement at his office on the 19th of September and that this was done with Mr. Kennedy who according to the witness was employed in the defendant's office. The defendant alleged that settlement was to be made at his office at the same time. The offices were in the same neighborhood, but the parties did not get together and nothing was done that evening. In October, the plaintiff went to the home of the Snyders with Mr. Kennedy and there tendered a certified check of the defendant to Mrs. Snyder for the balance of the purchase money. Mr. Kennedy offered the check to Mr. Snyder and said: "I am tendering you a certified check for that lot for Schock," to which Mr. Snyder replied: "I don't wish to receive any check from Mr. Berry," and he shut the door. Nothing further occurred between the parties to the contract and no proceeding was instituted by the plaintiff for specific performance. The plaintiff went to Mr. Berry's

house and told him he either wanted him to settle for the lot or wanted his money back; whereupon Mr. Berry gave him a certified check for the amount and took a receipt therefor. At the time of the negotiation between the parties to the contract there was a mortgage on the property. This had not been paid nor had a release been obtained thereof on the 19th of September when the defendant and the Snyders failed to meet for the settlement. It was said by the latter that they had arranged with Mr. Hall, the solicitor of the loan association, to have a release of the mortgage, but Mr. Hall was not at the office of the broker of the vendors, nor was there a release there. So far as can be seen from the evidence, the Snyders were not at that time prepared to deliver a deed for the property free from encumbrances. The promise that the release would be procured at the next meeting of the association was not the equivalent of a discharge of the property from the lien.

It was not made to appear at the trial that the averment in the plaintiff's statement of claim that he was unable to secure the lot in question was true. Time having been waived by the conduct of the parties, the vendee was entitled to a reasonable opportunity to comply with the terms of the agreement, and if at the only time when the Snyders appear to have been present to tender a conveyance at their broker's office, the title of the lot was still encumbered, they were not in a situation where they could allege performance; in which case it could not be successfully contended the defendant was in default. He was not a party to the contract of sale. Whatever rights existed thereunder belonged to the plaintiff. Moreover in receiving his money back from the defendant, he put it out of the power of the latter to complete the transaction so far as he was concerned if he were disposed so to do. The case was disposed of without regard to these considerations and solely on the inquiry whether the plaintiff's broker had been negligent with respect to the settlement. The only evi-

dence that Mrs. Snyder was not willing to perform her part of the contract was that relating to the refusal of Mr. Snyder to accept Mr. Berry's check, but that may have been because of lack of confidence in its worth. The statement of Mr. Calverley, Mrs. Snyder's broker, said to have been made to the defendant sometime before that unless there was a settlement, Mrs. Snyder would lease the property and not convey it, was not competent to show the unwillingness of Mrs. Snyder to execute a deed. The case does not present such evidence that the plaintiff's contract with Mrs. Snyder was not in force at the time he alleges the defendant failed to comply with his contract to procure a sale of the property as would support an action on a breach of his obligation. The cases cited by the appellee are not in point. Dunn v. Mackey, 80 California 104, was an express agreement to sell an owner's property at a price agreed upon within a designated time. Failure to sell according to the contract would clearly subject the parties assuming the obligation to liability for damages. Rohrback v. Hammill, 162 Iowa 131, was an action against a broker who had committed a fraud on his employer by taking the title to the property in his own name. Bodine v. The Trust Company, 33 Pa. Superior Ct. 68, was an action in trespass. The defendant was employed to make a search for liens on property which the plaintiff was about to purchase and an encumbrance was overlooked in the search and only discovered after the conveyance had been made. The grantee in the conveyance was thereby subjected to a loss to the extent of the encumbrance for the payment of which he was fixed in defense of his title. The soundness of the conclusions in the cases referred to is not open to controversy, but they do not apply to the facts disclosed by the record before us.

It is unnecessary to discuss the question raised on the first assignment as to the measure of damages stated by the court. It may well be questioned whether the rule applied is applicable in the case under consideration.

Our conclusion, however, is not based on a consideration of that feature of the case. The defendant was entitled to an affirmation of the point for binding instructions.

The judgment is reversed.