The fire insurance policy involved in this action was issued by the defendant company in March, 1927, covering certain buildings and personal property of one S.J. Pritchard. There was attached to said policy a clause making any loss occurring thereunder payable to the Union Central Life Insurance Company, plaintiff-appellant, mortgagee, as its interest may appear. The appellant held a mortgage upon the real estate on which the insured buildings were situated, securing a loan of $25,000. A loss occurred which was adjusted, and the insurance company, appellee, admitted liability under the policy in the sum of $427 on account of damage to or loss of personal property of the insured, and $2,034 on account of loss or damage to buildings. The plaintiff was apparently not interested in the amount of the adjusted loss on personal property, but on August 7th following the loss and adjustment thereof, it wrote a letter to the appellee inclosing the policy therewith, and requested that two checks be issued, payable to appellant, mortgagee, and Pritchard, mortgagor, jointly; one for $2,034 and one for $427. Checks were issued by the appellee in the amounts indicated, payable to the appellant and Pritchard jointly, and forwarded to the appellant. The check for $427 is not involved in this action, and we assume that it was paid. Pritchard, the mortgagor, refused to indorse the check for $2,034, and it was never presented for payment or paid. Shortly after the appellant received the checks, the $2,034 check was returned to the appellee with the advice that Pritchard, the mortgagor, refused to indorse the same, and with a request that a new check be issued payable only to the appellant mortgagee. This the appellee refused to do. The appellee executed *Page 764 
the checks under the date of August 10, 1931, and forwarded them to the appellant in Cincinnati, Ohio. On August 22, 1931, the appellant wired the appellee advising it that Pritchard refused to indorse the check and requesting that a new check, payable to the appellant only, be issued. The appellee answered by wire as follows:
"Check favor Pritchard and your company drawn correctly we prefer to not change the check."
On August 26 following, plaintiff mailed the check in question to the defendant in a letter containing the same information and request as in its former telegram. The defendant answered this letter, stating:
"It is impossible for us to make any change in this voucher. Our records show S.J. Pritchard as the assured and loss payable to the Union Central Life Insurance Company, mortgagee, as its interest may appear at time of loss. Should we change this voucher and make it payable to the Union Central Life Insurance Company, we would subject ourselves to a law suit with Mr. S.J. Pritchard. We are always glad to do anything that we possibly can to help out the mortgagee, but we know that you will feel that we are not justified under our contract in changing this voucher. We are returning the same to you as possibly you will be able to get Mr. Pritchard's indorsement on the same. If you are not, and it is necessary for you to foreclose this mortgage against Mr. Pritchard, you can return the voucher to us and we will make out a voucher payable to the Clerk of the Court in the county where the suit is commenced, and the court will direct to whom this money should be payable, and if part should go to you and part to Mr. Pritchard, it will so direct how it should be divided."
On November 6, 1931, the check was again returned to the appellee together with the policy, with the request that a check be made payable to the appellant only, and offering to indemnify appellee against any possible claim of Pritchard. This request was refused by the appellee for the stated reason that the bank on which the check was drawn had closed its doors on October 1, 1931. On November 7, 1931, the defendant company returned the insurance policy together with the check, this letter containing the following statement:
"We have made our settlement with you exactly in accordance *Page 765 
with our contract and it is impossible for us to make any change now in this check."
Later the check was returned to and remained with the defendant. In January following, this action was commenced by the appellant to recover the amount of the adjusted loss.
It appears that the De Witt Savings Bank upon which the check in controversy was drawn closed on October 1, 1931, and a receiver was appointed therefor; and that the appellee company had on deposit in said bank, at all times after the check in question was issued and up to the time of the closing of the bank, funds more than sufficient to pay the said check; that after the bank had closed, the defendant made claim in the receivership matter, as a depositor, for the full amount of its deposit with no deduction for, or of the amount of said check; and that prior to or at the time of the trial of this case such deposit had been reduced by offsets and assignments to $1,234.43; that there had been a 20 per cent dividend paid by the receiver of the bank, and received and appropriated by the defendant company.
The foregoing facts were set up in the pleadings and fully stipulated by the parties upon the trial of this action.
The controversy thus presented is whether or not the check involved operated as a payment of the loss, and whether under the circumstances disclosed the appellant, mortgagee, may maintain this action on the policy.
The trial court, a jury having been waived, held that the delivery by the appellee of the check in question created a new relation, or contract, between the parties and operated as a payment of the loss. With this we cannot agree.
Acceptance of a check by a creditor is not necessarily a payment of the debt or claim. Under various circumstances and by agreement or intendment it may operate as a payment. Sanitary Can Co. v. Nat'l Pickle Canning Co., 191 Iowa 1259, 184 N.W. 354, 18 A.L.R. 532; Lyon v. Northrup, 17 Iowa, 314; Dille v. White,132 Iowa 327, 109 N.W. 909, 10 L.R.A. (N.S.) 510; Rohrbach v. Hammill, 162 Iowa 131, 143 N.W. 872; Frank v. Frost,170 Wis. 353, 174 N.W. 911. But here there was no agreement that the check issued in the amount of the adjusted loss should be a payment thereof. It is true the check was issued with the two payees named therein upon the request of the plaintiff. However, such method of payment, or tender of payment, is the ordinary method *Page 766 
pursued by insurance companies under like or similar circumstances. Of course, had the check been indorsed by both payees and cashed, it would have operated as payment, regardless of the diverse claims of the mortgagor and mortgagee. But the mortgagor, Pritchard, claimed an interest of some kind or in some amount of the adjusted loss, and such interest could not be prejudiced or wiped out by any act of the mortgagee or the insurance company, or by any agreement between them, to which he was not an assenting party. There was no agreement, either expressed or implied, that the issuance and delivery of the check should be payment of the indebtedness. No such agreement, or even an expressed intention that such should be the result, could have been entered into without the mortgagor, Pritchard, joining therein or consenting thereto. The defendant company had no such intention at the time it issued the check in question, as is shown by its later acts and conduct. In its telegram to the plaintiff, which we have heretofore quoted, it said that the check was correctly drawn and that it preferred not to change it, and in a later letter it said that Pritchard was the assured, with loss if any payable to the plaintiff as its interest might appear, and should it change the check and make it payable to the plaintiff only, that it would subject itself to a lawsuit with Mr. Pritchard; and in the same letter it suggested that if the plaintiff brought suit to foreclose its mortgage and would return the check to the defendant it would make out a new one payable to the clerk of the court in the county where the suit was commenced, and allow the court to direct to whom the money should be paid and in what proportions. And in a later letter to plaintiff, which we have quoted, the defendant said that it had made settlement exactly in accordance with the contract and that it was impossible to make any change in the check. This indicates very clearly that the defendant company had no contract with any one that the check should be considered as payment of its indebtedness; that it did not consider that it had such contract; that it did not intend, when the check was issued and delivered, that it should be payment or considered as payment, unless it was actually paid. The interests of the mortgagor and the plaintiff in the amount of said loss was not determined until the decree of foreclosure, and sale of the property had occurred. Under such sale, a deficiency judgment resulted in exactly the amount of this adjusted loss, $2,034. Thereby the interest of the plaintiff in said adjusted loss was determined as the full amount thereof. It is true that the defendant *Page 767 
probably lost some small portion of the amount of this check by reason of the failure of the bank upon which it was drawn, but that situation would undoubtedly have been the same had the check in question not been issued at all. The check as issued and delivered under these circumstances was only conditional, or a conditional payment. Of course, had it been properly indorsed, presented for payment, and paid, it would have operated as full payment and would have relieved the insurance company from any further liability to the mortgagor or the mortgagee; but such did not happen. The deficiency judgment remains as a debt of the mortgagor which may be collected from him if this action fails as against defendant company. The amount of the adjusted loss was due the mortgagor, under his insurance contract, subject only to the rights, if any, of the mortgagee therein. We cannot see why or how his rights should or could be prejudiced or foreclosed by any acts or conduct of the mortgagee and the insurance company, to which he was not a party. The insurance company never claimed that the check operated as payment until after the bank upon which it was drawn had closed. Its claims were that it had made settlement in accordance with its contract; that loss was payable to Pritchard and mortgagee; that it would subject itself to a lawsuit by Pritchard, should it change the check and make it payable to mortgagor, only; and that if action was commenced it would issue a new check payable to the clerk of court, and await the order of court as to whom the funds belonged. All this indicates very strongly that the check was a conditional payment, or tender of payment only, and that the defendant did not intend the issuance and delivery of the check, under the circumstances, to operate as payment, unless and until it was properly indorsed and cashed. We do not think the check operated as payment, and we are constrained to hold under the circumstances, and the law as we see it, that the district court erred in dismissing plaintiff's petition. The case is therefore reversed and remanded for further proceedings not in conflict with this opinion. — Reversed and Remanded.
ALBERT, C.J., and KINDIG, KINTZINGER, MITCHELL, DONEGAN, CLAUSSEN, and STEVENS, JJ., concur. *Page 768