THE CRAWFORD FINANCE CO., APPELLANT, *v.* DERBY, APPELLEE.

(Decided May 1, 1939.)

*Messrs. Strelitz & Dowler* and *Messrs. Carpenter & Freeman*, for appellant.

*Messrs. Young & Young* and *Mr. Earl S. Miller*, for appellee.

*Mr. Kenneth R. Derby, in propria persona.*

*Mr. George D. Welles, amicus curiae.*

CARPENTER, J. This was an action in replevin for an automobile. At the close of the evidence the trial court, on motion of the defendant, entered a judgment for the defendant. The plaintiff appealed on questions of law.

Numerous errors are assigned, but the only ones that will receive consideration herein are the granting of defendant's motion for judgment, and the overruling of a similar motion by the plaintiff.

The material facts are undisputed. In substance, they are: For some time prior to August 13, 1938, Harry N. Bedell had been an authorized dealer in Hudson-Terraplane automobiles. On May 31, 1938, he obtained from a distributor, a new automobile of that make and with it a manufacturer's certificate of title, as provided for in Section 6290-2, General Code. Thereupon Bedell, for a valuable consideration, gave to plaintiff, The Crawford Finance Company, a chattel mortgage on that automobile and with it gave the company the manufacturer's certificate of title which he held. The chattel mortgage was not filed for rec-

ord or registered with any official. That automobile remained in the possession of Bedell and was kept in his display room and offered for sale, and plaintiff knew this would be done.

On August 13, 1938, defendant, Kenneth R. Derby, without any knowledge of the chattel mortgage, constructive or otherwise, purchased the automobile and paid for it in full by transferring to Bedell a used automobile and paying the cash difference, and the automobile was delivered to Derby and he duly signed and left with Bedell an application for a certificate of ownership as required by Section 6290-5, General Code, but no such certificate was ever issued to Derby, although under that section it was the duty of Bedell to file an application for one "within three days after the delivery of such motor vehicle."

Shortly after August 13, 1938, Bedell became involved in serious financial and legal difficulties. On October 11, 1938, this action in replevin was filed and on a proper writ plaintiff took possession of the automobile in question, claiming the right to do so under the terms of its chattel mortgage which contained a covenant that upon various conditions, including sale or attempted sale by the mortgagor, the mortgagee might take possession of the property.

The rights of the parties must be determined by the so-called Certificate of Title Act of Ohio, Section 6290-2 *et seq.*, General Code. Since this cause was tried, the Supreme Court has upheld the constitutionality of that law in *State, ex rel. City Loan & Sav. Co.,* v. *Taggart,* 134 Ohio St., 374, 17 N. E. (2d), 758.

By Section 6290-9, it is expressly provided that the chattel mortgage filing sections, Sections 8560 to 8572, "shall never be construed to apply to or to permit or require" filing or other record of a chattel mortgage covering a motor vehicle. Continuing, that section provides, in part:

"Any mortgage, conveyance intended to operate as

a mortgage, trust receipt, conditional sales contract, or other similar instrument made hereafter and covering a motor vehicle, if such instrument is accompanied by delivery of said manufacturer's or importer's certificate and followed by actual and continued possession of same by the holder of said instrument, or in the case of a certificate of title if a notation of same has been made by the clerk of courts on the face thereof, shall be valid as against the creditors of the mortgagor whether armed with process or not, and subsequent purchasers, mortgagees and other lienholders or claimants but otherwise shall not be valid against them. All liens, mortgages and encumbrances noted upon a certificate of title shall take priority according to the order of time in which the same are noted thereon by the clerk of courts. Exposure for sale of any motor vehicle by the owner thereof, with the knowledge or with the knowledge and consent of the holder of any lien, mortgage or encumbrance thereon, shall not render the same void or ineffective as against the creditors of such owner, or holders of subsequent liens, mortgages or encumbrances upon such motor vehicle.''

This would seem to fit the plaintiff's situation and make its mortgage superior to the claim of Derby, a subsequent purchaser, unless the law elsewhere qualifies this very specific provision.

Two other sections define the rights and duties of a purchaser of a motor vehicle. The material part of Section 6290-3, General Code, is:

''No person * * * shall * * * purchase or otherwise acquire a motor vehicle unless he shall obtain a certificate of title for the same in his name in accordance with the provisions of this chapter.''

Section 6290-4, General Code, quite effectively precludes a would-be purchaser from acquiring any right or interest whatever in a motor vehicle, except by way of an official certificate of title. It provides:

"No person acquiring a motor vehicle from the owner thereof, whether such owner be a manufacturer, importer, dealer or otherwise, hereafter shall acquire any right, title, claim, or interest in or to said motor vehicle until he shall have had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer's or importer's certificate for said motor vehicle for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed, of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this chapter."

Under Section 6290-9, General Code, when the plaintiff for a valuable consideration took the chattel mortgage from Bedell, accompanied as it was by the manufacturer's certificate, it had all of the security for its lien it could get, and, until a certificate of ownership was issued by a clerk of courts, there was no way or place that mortgage could be filed or registered and be notice to any one of the lien. No clerk could issue a valid certificate of ownership without the manufacturer's certificate, which the plaintiff held.

On the other hand, from the whole scheme of the Certificate of Title Act, especially the sections quoted above, it is apparent that the Legislature intended to set up one and only one method by which liens on or titles to a motor vehicle could be acquired. To a purchaser, it makes a certificate of title issued by a clerk of courts on a proper application, accompanied by the preceding certificate, either manufacturer's or owner's, the *sine qua non* to any right or title therein.

The manufacturer's certificate was the key to the

whole situation. As long as plaintiff held it, it knew no one could acquire a title or lien ahead of its lien, nor could "any waiver or estoppel operate in favor" of any person against it, and it knew that "no court in any case at law or in equity" could "recognize the right, title, claim, or interest of any person in or to any [that] motor vehicle." Section 6290-4, General Code.

Mr. Derby knew that the only way he could be secure in parting with the purchase price of the automobile was to simultaneously get a proper certificate of title. Sections 6290-4 and 6290-9, General Code. When he intrusted Bedell with his used automobile and his money without such certificate, he did so at his own risk.

From the undisputed facts as they appear in this record, the motion for judgment made by the plaintiff at the close of the evidence should have been granted, and the failure to do so and the granting of defendant's motion were error.

The judgment is reversed and final judgment for plaintiff will be entered.

*Judgment reversed and final judgment for appellant.*

OVERMYER and LLOYD, JJ., concur.