### Colonial Finance Co. v. Hunt.

March 6, 1942.

300

Strother Hynes for appellant.

W. H. Dysard for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The Colonial Finance Company appeals from a judgment denying the enforcement of its mortgage, executed in Ohio, on an automobile sold in Kentucky to appellee, Marie Hunt, by Gallenstin Auto Sales Company, an Ohio dealer.

Gallenstin, the dealer, arranged with Colonial to finance the purchase of several automobiles from a Nash factory branch in Cincinnati. On November 29, 1939, Colonial wrote the factory to release the car (along with several others) to Gallenstin and agreed to pay the factory therefor upon receipt of manufacturer's certificates. The car was released to Gallenstin by the factory prior to December 1 and manufacturer's certificates were delivered to Colonial about 5:30 P. M. on December 1. Gallenstin was to pay Colonial ten percent of the purchase price and execute mortgage for the balance.

In October of the same year appellee had contracted to purchase a certain type Nash car from Gallenstin and turned over to him her old car, for which a bill of sale was executed. Gallenstin furnished her a used car in place thereof until delivery of the new car. She kept this used car a short time and her old car was returned to her until the new car could be delivered. She was to pay a balance of $350 on delivery of the new car.

On December 1 Gallenstin called appellee by telephone and told her he was unable to get the type of car appellee had agreed to purchase but had a different type coupe which he thought she would like. He arranged to meet appellee in Greenup, Kentucky, that night and did so. Appellee agreed to accept the car in controversy and it was delivered to her that night. Gallenstin could not make title to appellee, the manufacturer's certificate being in possession of Colonial. It was arranged that he would return the next day and deliver certificate of title and be paid the $350 balance. The next day Gallenstin's wife returned to Greenup without the certificate of title but managed to induce appellee to pay the $350 balance on the assurance that the certificate would be mailed to her. This was never done but appellee later managed to induce the County Clerk in Ohio to issue her a certificate, this being done in violation of the Ohio law which forbids the issuance of such a certificate without production of the manufacturer's certificate. On December 2, before the payment of the $350 balance by appellee, Gallenstin executed the mortgage sought to be en-

forced to Colonial. Colonial then paid the manufacturer for the car.

Laws of Ohio applicable to the transfer and sale of automobiles are Sections 6290-2 to 6290-4 of Baldwin's Ohio Code Service and are commonly referred to as the certificate of title act. By Section 6290-2 a manufacturer is prohibited from selling or disposing of a new car to a dealer to be used for purposes of display and resale without delivering to the dealer a manufacturer's certificate and a dealer is prohibited from purchasing or acquiring a car without obtaining from the manufacturer such a certificate. By Section 6290-3 no person is permitted to sell or dispose of any motor vehicle without delivering to the purchaser a certificate of title (which is obtained from clerks of court by certain statutory procedure) and no person is permitted to purchase a car without obtaining such a certificate of title. Section 6290-4 is as follows:

> "§ 6290-4. No person acquiring a motor vehicle from the owner thereof, whether such owner be a manufacturer, importer, dealer or otherwise, hereafter shall acquire any right, title, claim, or interest in or to said motor vehicle until he shall have had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer's or importer's certificate for said motor vehicle for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this chapter."

It is appellant's theory that Gallenstin never acquired title to the car and therefore was never in position to vest appellee with title; that under the law of Ohio appellant had a valid lien or mortgage on the car which must be recognized and given effect in this state when the car was brought into this state and sold; that this is true even though under the Kentucky law title may be passed as between the parties without the deliv-

ery of evidences of title and without registration as required by our own law. On the other hand it is the theory of appellee that acts necessary to pass title are governed by the law of Kentucky and not of Ohio; that the Ohio law was violated with appellant's connivance when the manufacturer delivered the car to the dealer without delivering to him manufacturer's certificate at the same time and that pursuant to this violation apparent authority to sell the car was conferred upon the dealer and therefore appellant is estopped to claim that the dealer had no title. We are called upon to choose between these two theories and, in doing so, we are confronted with the fact that each is supported by considerable equity.

We are unable to agree with appellee's position that the Ohio law was violated by the delivery of the car to the dealer without at the same time delivering to him the manufacturer's certificate. The obvious purpose of Section 6290-2 is to prevent traffic in stolen automobiles. Since the manufacturer delivered the manufacturer's certificate to appellant pursuant to the dealer's order, we do not construe the transaction as being a violation of the statute referred to. Certainly, under the Ohio law, there was nothing in this situation such as to call for the application of the doctrine of estoppel or deprive appellant of any civil right, as will appear later from the discussion of a case decided by the Ohio Court of Appeals.

We agree with appellee's theory that acts necessary to pass title, as to the transaction between the dealer and appellee, would be governed by the law of this state— consequently the transaction between Gallenstin and appellee at Greenup was sufficient to pass title to the car to appellee, even though the Ohio law as to delivery of evidences of title was not complied with, if Gallenstin ever had title to the car himself. Moore et al. v. Wilson, 230 Ky. 49, 18 S. W. (2d) 873. But a consideration of the Ohio law makes it apparent that Gallenstin never had title to the car. Section 6290-4 expressly provides that no person can acquire any right, title, claim or interest to a motor vehicle until a certificate of title or manufacturer's certificate is delivered to him. Gallenstin never acquired a manufacturer's certificate or certificate of title and therefore never acquired title to the car. Having acquired no title to the car he was never in position to

transfer title to appellee. This is the construction placed on the law by the Court of Appeals of Ohio in Crawford Finance Company v. Derby, 63 Ohio App. 50, 25 N. E. (2d) 306, 308. There the dealer obtained a car from a distributor and with it a manufacturer's certificate of title. The dealer gave to the Finance Company a chattel mortgage and with it gave the company the manufacturer's certificate. The chattel mortgage was not recorded. The car remained in possession of the dealer and was kept in his display room and offered for sale, the finance company knowing this would be done. The car was bought from the dealer by Derby without knowledge of the mortgage, constructive or otherwise. It was held that the car was subject to the mortgage in the hands of the purchaser without notice thereof, the court saying:

"The manufacturer's certificate was the key to the whole situation. As long as plaintiff held it, it knew no one could acquire a title or lien ahead of its lien, nor could 'any waiver or estoppel operate in favor' of any person against it, and it knew that 'no court in any case at law or in equity' could 'recognize the right, title, claim, or interest of any person in or to any (that) motor vehicle.' Section 6290-4, General Code."

It is clear that Gallenstin never acquired title to the car in Ohio, consequently he could not confer title on appellee in Kentucky.

Nor do we think the facts were such as to call for the application of the doctrine of estoppel as contended by appellee. Appellant, in having the manufacturer's certificate delivered to it when the car was delivered to the dealer, was following a legitimate and approved plan (in Ohio) to secure itself as to the indebtedness of the dealer to it. When it obtained the certificates it was amply protected against any attempt of the dealer to dispose of the car or encumber it since the dealer, by virtue of the statute, acquired no title and no one could acquire title from him when he was not in possession of the certificate. Thus the position of appellant was in this respect similar and equivalent to its possession of a valid recorded mortgage. As a matter of fact it is not necessary in Ohio to record a mortgage of this type where the mortgagee holds the manufacturer's certificate—indeed such a mortgage cannot be recorded under these circum-

stances. Crawford Finance Co. v. Derby, supra. It may here be remarked that the execution of the mortgage by Gallenstin to appellant on the morning following the attempted sale to appellee was but the execution of a written memorial evidencing the already secured indebtedness to appellant.

There is no doubt that the courts of our state would give full force and effect to a valid mortgage recorded in Ohio. The general rule is stated in Section 286 of the Restatement of the Law, Conflict of Laws, as follows:

> "If, after a chattel is validly mortgaged, the chattel is taken into another state, the mortgagee's interest in the chattel is recognized in the second state."

This is the rule in this state as is evidenced by the decisions in Fally v. Steinfield, 10 Ky. Law Rep. 982, and Herold Motor Car Co. v. Commonwealth, 216 Ky. 335, 287 S. W. 939. It is even generally held that the law of the state where a chattel is at the time of a conditional sale determines the effectiveness of such a sale in enabling the vendor to retain title and, if after a valid conditional sale the chattel is taken into another state without the consent of the vendor, the vendor's title will be recognized in the second state and his interest is not divested as a result of any dealings with the chattel in the second state. Restatement of the Law, Conflict of Laws, Sections 272 to 275.

Without determining that we would adopt this rule as to conditional sales, it inevitably follows that since we would recognize and enforce in this state, as to a chattel brought into the state, a valid mortgage recorded in another state, we should also give recognition to a transaction in another state which placed a chattel in an equivalent status, especially where the chattel is brought here without consent of the creditor. Certainly estoppel should not be applied to deny appellant the benefit of the security it held for its protection, a security acquired in reliance on the Ohio law which expressly screens such a transaction from the operation of estoppel and one which, under that law, afforded to appellant as full and complete, if not greater, protection than it would have enjoyed as the holder of a recorded mortgage.

It is our conclusion that under the well-recognized principles of comity and conflict of laws the laws of Ohio governing the transaction occurring there must be given

effect in determining the rights of the parties. When this is done there can be no doubt that the car in appellee's hands is subject to appellant's mortgage.

Judgment reversed with directions to enter a judgment in conformity with this opinion.

Whole Court sitting.