RAY NELSON, appellant, v. GREGG FISCH, appellee.

No. 47501.

(Reported in 39 N.W. 2d 594)

November 15, 1949.

Shull & Marshall and Wiley E. Mayne, all of Sioux City, and Fitzgerald & Smith and James W. R. Brown, all of Omaha, Nebraska, for appellant.

Burton Dull, of LeMars, and Paul E. Dull, of Marshalltown, for appellee.

SMITH, J.—■■ A preliminary matter demands our attention. We have on various occasions criticized, but condoned, violations of rule 340 of our Rules of Civil Procedure. See, e.g., Phillips v. Smith, 240 Iowa 863, 38 N.W. 2d 87; Walker v. Walker, 239 Iowa 1055, 33 N.W. 2d 413; Lutz v. Cunningham, 240 Iowa 1037, 38 N.W. 2d 638; Pfeffer v. Finn, 239 Iowa 24, 30 N.W. 2d 481; McManis v. Keokuk Sav. Bk. & Tr. Co., 239 Iowa 1105, 33 N.W. 2d 410; Schoeman v. Loyal Protective L. Ins. Co., 239 Iowa 664, 674, 32 N.W. 2d 212.

The record presented here most nearly resembles that in the McManis case, supra. It follows a stipulation of the parties "that appellant's proposed abstract and appellee's proposed amendments *will both be set forth in full in the printed record.*" This continues the very evil the rule was intended to cure. It com-

plies with neither its letter nor spirit. Rule 340 was designed to provide "a simple method of preparing a single, coherent, intelligible, easily used record of the case as tried" and to avoid the burden of "trying to piece together the appellants' and appellees' versions of the record in order to ascertain what the true record is." Cook, Iowa Rules of Civil Procedure, annotated, pages 747, 748. The above quotation continues: "The rule provides for one 'Record' settled by the trial judge whose interest is paramount in seeing the case go up on a record that reflects the true state of the facts."

Here the first one hundred twenty-one pages, in their content, conform to rule 340(d). They present the testimony largely in a narrative form. Then follow approximately one hundred fifteen pages of appellee's amendment consisting of questions and answers, and objections, rulings and comments of court and attorneys, to be substituted for various portions of the preceding narrative statement of the testimony. Some are repetition of question and answer already set out. The page-number references to the parts to be superseded evidently refer to the pages of the typewritten version, which is not before us, and the index of the testimony of the various witnesses does not refer to the proposed changes in their testimony as set out in the last part of the document.

We could properly reject the entire record, taxing its printing cost ($450.50) equally to both parties (since they seem to be equally at fault) and require one prepared in accordance with the rule. However, we have concluded *just once more* to spare the litigants the expense that would thereby be caused by the failure of their attorneys to observe a rule designed to protect all parties and the trial court by enabling the supreme court to determine exactly the proceedings complained of. The proposed substitutions in appellee's amendment will of necessity be treated more as additions than substitutions, since we have no sure method of knowing what parts of the narrative portions to delete or to be superseded.

Plaintiff is a used-car dealer in Omaha, Nebraska; defendant, a taxicab operator in LeMars, Iowa. On February 10, 1948, plaintiff acquired possession of the 1948 black Dodge automobile

involved in this case from the King Auto Company, of Omaha, but did not receive the certificate of title until the next day.

However, on the afternoon of the same day (the 10th) he delivered the car (as one of a lot of fifteen) to one Richardson, a known used-car dealer in Hebron, Nebraska, who gave plaintiff his separate personal check for each car. Plaintiff's uncontradicted testimony is that it was agreed between them the Nebraska certificate of title of each car would be attached to the check given for such car and deposited with the check and delivered to Richardson when the check was paid.

The next morning plaintiff paid King Auto Company for the car involved here, received the certificate of title for same, attached it to the check Richardson had given for it, and deposited the check with certificate attached along with similar checks given for other cars. The check was for $2775 and recited for what car it was given. On February 16 he was informed the check had been returned with others of the same group, unpaid on account of insufficient funds. Thereafter plaintiff attempted to obtain payment of the checks from Richardson and succeeded in getting $7170 which, at Richardson's direction, was applied to the payment of checks for cars other than the one here involved. Richardson later absconded (plaintiff says "shortly after February 10"; Laughton thinks February 25) and his whereabouts was apparently unknown at time of trial.

Meanwhile, the week before February 10, defendant, in LeMars, Iowa, desiring a black Dodge automobile, made his wants known to his friend Laughton, who describes himself as a salesman for United Film Company. It appears, however, he was conducting a quite active side line in what has come to be euphemistically called the "new used-car" business, a term that aptly illustrates the futility of statutory attempts to circumvent the ancient, and more or less honorable, law of supply and demand.

Laughton was acquainted with Richardson from whom he had recently purchased a car, delivered to him at plaintiff's car lot in Omaha, without the certificate, which was, however, forwarded to him a few days later.

After hearing of defendant's desire Laughton promptly (on Friday, February 6) visited Richardson at Hebron. Richardson undertook to obtain such a car. Laughton paid him $500 down.

He admits he already had five other $500 deposits with Richardson at that time. The following day Richardson telephoned Laughton the car would be at plaintiff's lot on February 10. Defendant, being unable to go to Omaha on that date, sent another friend (Shepherd) with Laughton to drive the car home.

On the night before Laughton and Shepherd started for Omaha defendant paid Laughton $2100 in cash. Laughton admits he paid Richardson only $1850. On the next night (the 10th) defendant was informed Shepherd had brought the car to LeMars but that it was without the certificate of title—that the papers would be along in about five or six days. Defendant says Laughton told him he (Laughton) would keep the car in the garage until the papers came through. Later Laughton told him Richardson "had skipped out and left the country."

■ We have thus far stated the uncontradicted testimony from both sides. Concerning the events at plaintiff's car lot at Omaha on February 10 the testimony is in some conflict. But the case is one at law tried to the court without jury, and, of course, reviewable here on errors only. The findings of fact of the trial court are conclusive so far as sustained by sufficient evidence. Unfortunately the trial judge did not comply with rule 179, R.C.P., requiring findings of fact and *separately stated* legal conclusions.

However, he did expressly find "that on said tenth day of February, 1948, the plaintiff knew that the said George A. Richardson was a dealer in automobiles; that the plaintiff sold and delivered the automobile * * * to the said George A. Richardson and that the plaintiff and his agents knew, or should have known, that the said Richardson was then selling the said automobile to the defendant through his authorized representatives and that the said Richardson was then being paid for said automobile. The plaintiff also knew that the car in question was sold and delivered, as aforesaid, and that it was serviced and supplied with one of the plaintiff's 'In Transit' cards and thereafter driven from the plaintiff's place of business." (No finding of fact is made as to the knowledge of defendant and his representatives.)

Defendant-appellee does not question that these findings have support in the record. In fact he invokes the rule that "findings of fact in jury-waived cases shall have the effect of a special verdict." Rule 334, R.C.P. Of course the trial court in

using the expressions "selling" and "sold" was not referring to technical passing of title which, under the Nebraska statute, hereinafter referred to, can only occur by issuance of a certificate of title. Whether there was a transfer of ownership was a question of law which the trial court seems to have by-passed, resting the decision on the proposition plaintiff was estopped, or had waived the right, to repossess the car from defendant to whom Richardson had "sold" it.

Plaintiff on appeal lists nine errors but his brief argues them in four divisions: I. The transaction was in Nebraska and subject to the statutes of that state, specifically, section 60-105, Revised Statutes, Supplement, 1947; II. The court erred in holding defendant was a bona fide purchaser; III. The court erred in holding the plaintiff was estopped because the elements of estoppel are not shown; and IV. The court erred in finding there was a "sale" from plaintiff to Richardson, if by such holding was meant a transfer of ownership.

We make no attempt to follow this order in our consideration of the case.

I. The finding that defendant (through "his authorized representatives") was in effect dealing directly with Richardson is conclusive that the transaction was in Nebraska and subject to the statute of that state. That statute provides, so far as material here:

"No person * * * acquiring a motor vehicle * * * from the owner thereof * * * shall acquire any right, title, claim or interest in or to such motor vehicle * * * until he shall have had issued to him a certificate of title to such motor vehicle * * *; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title * * * for a valuable consideration. No court in any case * * * shall recognize the right, title, claim or interest of any person in or to any motor vehicle * * * sold or disposed of * * * unless evidenced by a certificate of title * * * duly issued, in accordance with the provisions of this act." Section 60-105, Revised Statutes of Nebraska, Supplement, 1947.

The requirement of a certificate of title as a prerequisite to obtaining ownership has been upheld by the Nebraska court as a

regulatory act in the "valid exercise of the police power." Blixt v. Home Mutual Ins. Co., 1945, 145 Neb. 717, 720, 18 N.W. 2d 78, 79. See also State ex rel. City Loan & Sav. Co. v. Taggart, 134 Ohio St. 374, 17 N.E. 2d 758; Crawford Finance Co. v. Derby, 63 Ohio App. 50, 25 N.E. 2d 306, 308; Associates Inv. Co. v. Le-Boutillier, 69 Ohio App. 62, 42 N.E. 2d 1011; Enfield v. Butler, 221 Iowa 615, 632–635, 264 N.W. 546 (involving Missouri statute); Endres v. Mara-Rickenbacker Co., 243 Mich. 5, 219 N.W. 719; Craig v. Rueseler Motor Co., Mo. App., 159 S.W. 2d 374; Majors v. Majors, 153 Pa. Super. 175, 33 A. 2d 442, affirmed 349 Pa. 334, 37 A. 2d 528; Bankers Inv. Co. v. Meeker, 166 Kan. 209, 201 P. 2d 117. These cases concern legislation of a similar character.

It is clear under this record that no "right, title, claim or interest in or to" this car ever passed to Richardson or through him to defendant. If defendant can successfully defend here he can only do so on the theory of waiver or estoppel.

II. The Nebraska statute in terms forbids consideration or recognition by any court of either waiver or estoppel in favor of one claiming ownership without having had issued to him a certificate of title. As to this provision see the Blixt case, supra, at page 720 of 145 Neb., page 80 of 18 N.W. 2d. The trial court here disclaimed jurisdiction or intent to declare that part of the statute unconstitutional but did nevertheless determine the case against plaintiff on the ground of estoppel or waiver or on the doctrine that "when one of two innocent persons must suffer by the act of a third person he who puts it in the power of the third person to inflict the injury must bear the loss."

There is some argument pro and con as to the constitutionality of that part of the statute, and as to the rules of comity and full faith and credit. We think it unnecessary to pass on these questions under this record. We have simply to determine whether there is any evidence to support the conclusion of the trial court that plaintiff is estopped or has waived the right to assert title against defendant. Certainly that conclusion is not supported by the findings of fact, unless mere delivery of possession to Richardson with knowledge he was reselling to defendant is to be held sufficient.

Not only are defendant and his representatives presumed to

8

have known the Nebraska statute, but it affirmatively appears they did know it. Laughton inquired about the certificate of title and was told by Richardson that he could not get it that day because "it wasn't there." In face of this "red light" he took the car because Richardson said "he would send it [the certificate] out just as soon as he got it." The money was paid to Richardson without inquiry of plaintiff. There is no testimony that Laughton, in paying it, relied on any act or representation of plaintiff or was misled by anyone. He trusted Richardson just as he had trusted him in previous dealings. He accepted possession of the car and paid for it without any evidence of title, knowing Richardson was not yet the owner but relying on his agreement to make title.

On the other hand, plaintiff did not depend on Richardson but dealt with him (as he had a right to do) at "arm's length." He attached the certificate of title to Richardson's check to be delivered only upon payment of the check. True, he permitted a transfer of possession of the car but we have held that mere possession is not indicia of ownership upon which to base estoppel. Kirk v. Madsen, 240 Iowa 532, 36 N.W. 2d 757.

We assume, as found by the trial court, that plaintiff knew Richardson was "selling" to defendant and being paid for the car. Was he under any duty to warn Laughton or Shepherd against so doing? They already knew Richardson did not have title. They made no inquiry to learn why the certificate was not available. In absence of such inquiry plaintiff had every right to permit them to rely on Richardson, as the record shows they did rely. The failure of title was due to Richardson's default, not plaintiff's.

Defendant's brief says the trial court found "as a matter of fact that plaintiff or his agent Richardson was selling the automobile to defendant." The court did not so find and the record would not have supported such a finding. We have already quoted the exact language of the trial court.

There was no affirmative act by plaintiff or his employees to promote the deal and certainly none upon which defendant's representatives relied or even claim to have relied. The servicing of the car preliminary to its being driven away by Shepherd and the attaching of the "transit tag" to take care of the possibility he

might be stopped by Iowa highway officers took place after Richardson had been paid his money and anyway were not such acts as to form a basis for estoppel. They constituted no "indicia of title" nor do Laughton and Shepherd claim they relied on them.

III. The trial court applies the term "innocent purchaser" to defendant and invokes the doctrine announced in Crescent Chevrolet Co. v. Lewis, 230 Iowa 1074, 300 N.W. 260, that where one of two innocent persons must suffer by the act of a third, he who puts it in the third person's power to inflict the injury must bear the loss.

The doctrine does not apply here. In the cited case it was held vendor clothed vendee with indicia of ownership apart from mere possession of the car. We did not hold delivery of possession sufficient. See Kirk v. Madsen, supra, 240 Iowa, pages 537, 538, 36 N.W. 2d, page 760. Nor was it held sufficient in White v. Pike, 240 Iowa 596, 36 N.W. 2d 761, cited by defendant.

Plaintiff here did not put it in Richardson's "power to inflict the injury." It was not plaintiff's delivery of possession of the car but defendant's payment of the money with knowledge the certificate of title was not available that made the injury possible.

Nor was defendant an "innocent purchaser." The term is thus defined: "One who * * * purchases property * * * without knowledge or means of knowledge sufficient to charge him in law with notice of any infirmity in law in the title of the seller." 43 C.J.S., Innocent Purchaser, page 1203.

It seems clear defendant, through actual knowledge of his representatives, as well as by presumption of his knowledge of the law, must be charged with knowledge of Richardson's entire lack of any "right, title, claim or interest."

The language of the Ohio Court of Appeals in an analogous case under a similar statute is pertinent here:

"Mr. Derby knew that the only way he could be secure in parting with the purchase price of the automobile was to simultaneously get a proper certificate of title. * * * When he intrusted Bedell with his used automobile and his money without such certificate, he did so at his own risk." Crawford Finance Co. v. Derby, 63 Ohio App. 50, 55, 25 N.E. 2d 306, 309.

See also Lux v. Lockridge, 65 Idaho 639, 150 P. 2d 127, 128; Swartz v. White, 80 Utah 150, 13 P. 2d 643.

We are forced to conclude under this record that defendant and his representatives took their chances in attempting to buy a car in Nebraska without safeguarding themselves under Nebraska law. Plaintiff is not shown to have been guilty of any fraud to impeach his title or any act to estop him from asserting it. The conclusion of the trial court is erroneous under the record and must be reversed.—Reversed.

All JUSTICES concur.