## THE STATE v. BROWN.

25   561
106  703
—
25   561
123  454
129  561/
     138/

1. **Criminal law; ACCESSORIES.** By section 4668 of the Revision, the distinction between an accessory before the fact and a principal is abolished, and all persons concerned in the commission of a public offense, including aiders and abettors, are guilty as principals.

2. —— **LARCENY: PERSONATION OF ANOTHER.** A person who falsely personates another, and in such assumed character receives property intended to be delivered to the party so personated, with intent to convert the same to his own use, is guilty of larceny under section 4241 of the Revision.

3. —— **TRESPASS NOT A NECESSARY INGREDIENT TO LARCENY.** The common law rule, that there could be no larceny without a trespass, and no trespass where there was consent by a party authorized to give it, even though such consent was obtained by fraud, is abrogated in cases contemplated by said section 4241.

4. —— **POSSESSION OF STOLEN PROPERTY: EVIDENCE.** Where a person found in the recent possession of stolen property states that he bought it of a stranger, this does not necessarily constitute such an explanation as to require the State specifically to disprove it. It is enough, if the attendant circumstances satisfy the jury of the falsity of the explanation, and of the guilt of the accused.

*Appeal from Cedar District Court.*

FRIDAY, OCTOBER 23.

LARCENY: DELIVERY PROCURED BY FRAUD: RECENT POSSESSION, ETC. — The defendant and one Charles Ferguson were jointly indicted for stealing a mare, belonging to Mrs. Mary Carpenter. It does not appear from the record whether Ferguson had been arrested or tried. The defendant, Brown, pleaded not guilty, and was tried to a jury.

On the trial, the evidence showed, that the mare in question strayed from Mrs. Carpenter, the owner, a resident of Cedar county, on Friday, March 27, 1868, and was taken up as an estray in the same county on the

Sunday following (March 29th), by one David Brink. Brown, the defendant, who was engaged in peddling pumps, stayed over night with Brink on the following Monday (March 30th), and left on Tuesday morning. While at Brink's, the defendant was informed by him that he had taken up the animal, and for certain reasons which were stated, Brink also told the defendant that he supposed she belonged to a man near Maquoketa, in Jackson county. Brink testified, that Brown examined the mare very closely, and more than once; and that, as he (Brink) passed by his house he discovered the defendant again looking at the animal, and afterward writing something in a book; and that he again went and looked at her very closely. Brink testified that "he had told some others that he had taken up such a mare, but did not describe her to them particularly." Defendant left Brink's on Tuesday morning, and on the forenoon of the next day (Wednesday), a man calling himself Charles Ferguson came to Brink's, inquiring for a stray mare, and accurately describing the animal which Brink had taken up. Ferguson stated that he had come from Maquoketa, and when he saw the mare he claimed it as belonging to his father. So perfect and minute was his description of the animal that Brink let him take her away, and he started off on the Maquoketa road. About two hours afterward, an agent of Mrs. Carpenter, the real owner, came to Brink's for the mare. About five o'clock in the afternoon of the same day on which Ferguson took the mare away from Brink's, witnesses produced for the State, saw her in the possession of the defendant, he at the time having three horses, and, on the same night she was found by the agents of Mrs. Carpenter in the defendant's exclusive custody. He claimed that he had bought her that day of a stranger, giving therefor a watch, his note for fifty dollars and a certain amount of money.

Defendant's statements, as to the amount of money he gave to the stranger, varied. To one witness he said he gave $8, and to others $25. And to some of the witnesses he stated that he gave his *note* for $50, and to one, that, instead of giving his note, he gave "pump orders" for $50.

In his statements of how he acquired the mare, he denied that he had purchased her of Ferguson, but said he bought her of a stranger, describing him. Some of the witnesses for the State stated that they had known Brown for some years as engaged in peddling pumps, but gave no testimony as to his character.

Other circumstances of more or less evidential force against, the defendant appears in the State's testimony, but it is not necessary to advert to them in order to understand the questions of law decided by the court.

The defendant produced no evidence.

Being convicted and sentenced to two years' imprisonment in the penitentiary, the defendant prosecutes the present appeal.

*Henry O'Connor*, Attorney-General, for the State.

*D. C. Cloud* for the defendant.

DILLON, Ch. J. — I. The District Court, in its charge to the jury, after defining larceny, instructed them, "that 1. CRIMINAL if they believed from the evidence that the LAW: acces- sories. defendant procured Ferguson to take the mare, then the act of Ferguson is the act of the defendant for the purposes of this trial."

The first point made by the defendant on this appeal, is thus stated in the printed argument of his counsel: "Larceny implies, in all cases, a tortious taking. There can be no larceny without a trespass. When property is surrendered voluntarily by the owner or a person having

the legal custody thereof, although surrendered to a person who has no shadow of right, and upon false representations made by such person, and with intent wrongfully to appropriate the property to his own use, it is not larceny. It may be a crime, but not that of larceny. If for any thing, the defendant should have been indicted under section 4394 of Revision, for obtaining the property by false pretenses."

Two sections of the Criminal Code furnish a complete answer to this argument of the defendant's counsel, and authorize the instructions of the court to the jury respecting the subject under consideration.

Section 4668 provides, that "the distinction between an accessory before the fact, and a principal, is abrogated, and all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aid and abet in its. commission, though not present, must hereafter be indicted, tried and punished as principals."

And a section in the chapter on Larceny enacts, that, "if any person falsely personate or represent another, and, in such assumed character, receive any money or property intended to be delivered to the party so personated, with intent to convert the same to his own use, he is guilty of larceny, and shall be punished accordingly. Rev. § 4241.

2. —— larceny; personation of another.

If Ferguson had found Mrs. Carpenter's mare at large on the prairie, and had there taken her with intent to steal, he would be guilty of larceny, and the trespass involved in the common law notion of larceny would exist. If the defendant Brown aided and abetted the act of Ferguson, he, though not present, would, under our statute, be a principal equally with Ferguson. Rev. § 4668, *supra.*

Whether a trespass could be predicated in law of the delivery by Brink, the custodian, but who had no proprie-

tary interest or authority, of the possession of the mare to Ferguson for the owner, by reason of his fraudulent representations, we need not stop to inquire (see 2 Bish. Cr. Law, 3d ed., §§ 815, 817, 824, 827), for section 4241 of our statute applies, and under it, if Ferguson falsely and willfully represented to Brink, that his father was the owner of the mare, and caused Brink to deliver him the property as agent for such assumed owner, and if he received it with intent to convert the same to his own use, he is guilty of larceny.

And if Brown procured Ferguson to do this, he is also, under the statute, guilty of larceny though not present. Rev. § 4668.

Under the instructions given them, the jury must have found from the evidence, that Brown did procure Ferguson thus to obtain the property.

It is true, as argued by appellant's counsel, that at common law there could be no larceny without a trespass, 3. —— trespass and no trespass where there was a consent by not a necessary a party authorized to give it, even though ingredient to larceny. such consent be obtained by fraud. But the section of the statute above quoted (§ 4241,) was enacted to do away with this technical doctrine of the common law in the cases therein mentioned.

II. Ferguson obtained the mare from Brink in the forenoon, and at four o'clock of the *same day* she was in the 4. —— possession of the defendant. The court sion of stolen charged the jury that under the circumstances property: evidence. (which appear in the statement) it was incumbent on the defendant to explain to the jury how he came into the possession of the property. This was right. He did attempt such an explanation. He claimed that he had bought it of a stranger, and not of Ferguson; and his statements of the particulars of the purchase were not consistent.

Taking the whole evidence together, and the fact that the defendant failed to produce any evidence of good character, we cannot say that the jury did wrong in finding that the defendant's explanation was unsatisfactory, and that he was the guilty associate of Ferguson, if not indeed the prime mover in the commission of the offense charged against them. The law as given to the jury accords with the rule established by the courts. See notes to *Regina* v. *Evans*, Lead. Crim. Cases, 363, where some of the more important adjudications on the subject of the presumption arising from the recent and unexplained possession of stolen property are stated.

If the defendant had admitted that he procured the property from Ferguson, and if there had been no previous acquaintance of the two, and no evidence of collusion, the State might have been bound to negative his account. And so if he had claimed to have purchased it of a real person, naming him, by whom the account the defendant gave could be disproved if false, the State might have been obliged to prove the falsity of the explanation. But where the claim is, that he bought the property of a *stranger*, this is not necessarily such an explanation as obliges the State specifically to disprove it. Notes to *Regina* v. *Evans*, *supra*. It is enough if the attendant circumstances satisfy the jury of the falsity of the explanation, and of the guilt of the defendant beyond reasonable doubt.

In the case at bar the circumstances were strongly inculpatory of the defendant, and his conviction does not rest alone upon the presumption of guilt arising from his very recent possession of the property.

In conclusion, it is deemed proper to remark, that, at first, we somewhat doubted the sufficiency of the evidence to sustain a conviction. It was a case in which proof of previous good character would have been peculiarly appro-

priate, and such proof would very much have strengthened the doubts referred to. These doubts are weakened by the failure of the defendant to produce any evidence whatever; and defended as he was by experienced counsel, we feel justified in presuming that the failure to prove good character and other facts, which, had defendant been innocent, would seem to have been within his power, is to be ascribed not to oversight, but to inability to establish an antecedent character for honesty, and to disprove or explain the facts indicative of guilt shown by the evidence for the State.

Affirmed.