C. C. CROUSE, Assignee, Appellee, v. CADWELL TRANSFER & STORAGE COMPANY, Appellant, and FRED A. HERMANN, doing business as MOTOR FREIGHT TERMINAL, Appellee.

C. C. CROUSE, Assignee, Appellee, v. DRAGOUN TRANSFER & STORAGE COMPANY, and/or DRAGOUN MOTOR FREIGHT LINES, Appellant, and FRED A. HERMANN, doing business as MOTOR FREIGHT TERMINAL, Appellee.

No. 44675.

1084

MAY 9, 1939.

REHEARING DENIED DECEMBER 13, 1939.

Stipp, Perry, Bannister & Starzinger, for appellants.

Chellis E. Bellew and Kern & Faville, for appellees.

OLIVER, J.—On July 15, 1936, a fire consumed the Motor Freight Terminal of Des Moines, Iowa, together with its contents. It is not charged the fire was the result of negligence. Destroyed, among other things, were six shipments of merchandise owned by various parties and which were then temporarily in said terminal in the course of intrastate transit by truck freight carriers.

The owners of said shipments assigned their claims for the loss thereof to appellee Crouse, who instituted two actions at law to recover the value of the respective shipments. Each action was based upon the failure of the truck company, as a common carrier, to safely transport and deliver the shipments undertaken by it. One of the suits was against appellant Cadwell Transfer and Storage Company of Mason City, Iowa, upon three of said shipments, the other against appellant Dragoun Transfer and Storage Company and/or Dragoun Motor Freight Lines of Ames, Iowa, for the other three. Appellee Fred A. Hermann, doing business as Motor Freight Terminal of Des Moines, Iowa, was named as a defendant in each case, but no recovery was prayed by plaintiff against him. However, in each action the truck company, in addition to denying liability for the loss of the shipments over its line, cross-petitioned against appellee Hermann, doing business as Motor Freight Terminal, alleging that said loss occurred while the goods shipped were in the possession and under the control of Motor Freight Terminal, and praying that Hermann be adjudged primarily liable

for any judgment rendered against said carrier. Later the two actions were consolidated and tried to the court without a jury.

The trial court rendered judgment for appellee Crouse against each appellant trucker for the total of the respective claims in suit against that carrier and denied recovery to each trucker on its respective cross-petition against appellee Hermann. From said judgment the two truck companies prosecute this appeal.

Appellants each operated a motor freight line between Des Moines and various other cities. As such they were common carriers, their operations in Iowa being under permits issued by the State Commerce Commission. Their method of operation was largely of the type known as "door to door", in which the merchandise was transported from the door of the consignor to the door of the consignee. In various cities on its lines each carrier maintained depots or stations at which shipments from said place were collected, and shipments to said point were unloaded. The hauling of the shipments between the depots and the doors of the shippers in certain cities was done in part or in whole by pickup trucks employed by the trucker at each place. At Des Moines, along with a considerable number of other licensed truckers, the depot of each appellant was located at Motor Freight Terminal.

Appellee Hermann had owned and operated Motor Freight Terminal for some years prior to 1936. Hermann also owned and operated four or five trucks which were used for pickup and delivery service in Des Moines for some shipments of certain carriers originating or terminating at Des Moines, and passing through his depot. Most of the truckers appear to have handled their own pickup and delivery service and in some cases this was done by the individual shippers. Each carrier was allocated a separate and individual space in the depot in which were placed the incoming and outgoing shipments of said trucker. Pickups made by individual truckers did not pass through the terminal.

For the use of space in the terminal, the service in handling shipments at the terminal and acting as an information center relative to orders and calls from various shippers and receivers to the respective truck companies, Hermann made a charge to each truck line based upon the weight of the shipments of said carrier which passed through the terminal. Pickup and delivery

service for truck lines was charged to the carrier upon a similar basis or in accordance with a special contract between it and Hermann. The shippers paid nothing to Hermann for any service rendered by him, though as agent for various carriers, he handled the collections of the carriers' freight charges.

The presidents of each appellant trucking company testified that Hermann had charge of their respective affairs and truck operations in Des Moines under an oral agreement that he was to act as their agent in all matters pertaining to their business in Des Moines, with authority to sign and receipt for bills of lading, accept shipments and place them in the space allotted to said lines in Motor Freight Terminal, and perform for them other acts incidental to their operations. Under the agreement, Hermann was to handle all pickups and deliveries in Des Moines for Cadwell. For Dragoun, this was to be done upon request. The agreed charges for these services were to be paid to Hermann by the Cadwell and Dragoun Companies.

Five of the six shipments in controversy originated in Des Moines, four of which had been hauled from the places of business of the various shippers by Hermann's trucks and one by the shipper. At the time of the fire all these had apparently been placed in the proper spaces in the terminal assigned to Dragoun and to Cadwell. The sixth shipment had been transported by Cadwell from Mason City, and was apparently awaiting delivery to its consignee at Des Moines.

I. This is an action at law which was tried to the court. Therefore, the findings of fact by the court have the same force and effect as the verdict of a jury and if supported by substantial evidence will not be disturbed upon appeal. Clark v. Krogh, 225 Iowa 479, 280 N. W. 635; Murphy v. Callan, 199 Iowa 216, 199 N. W. 981.

II. It is contended by appellants that at the time of the fire the shipments in controversy were not in their possession, but in the possession and control of Hermann in Motor Freight Terminal. The trial court found that the dealings and doings of Hermann relative to the shipments in controversy were as agent for appellants, and, therefore, that the shipments were, at the time in question, in the possession and control of appellants. Consequently, the court held appellants liable to the shippers for the loss.

Considerable evidence was introduced, relative to the

character in which Hermann was acting in handling these shipments. However, we may not weigh the evidence upon an appeal of this nature, except to determine whether the facts found by the trial court have substantial support in the record.

Reference has already been made to the testimony of the president of each appellant truck company that Hermann had been engaged to handle their business and truck operations in Des Moines for them. Quoting from one of them:·

''In fact we expected the terminal and Mr. Hermann to perform every service for us in Des Moines that we would perform ourselves had we been located in Des Moines.''

Without discussing the record in detail it is sufficient to state that there was substantial evidence in support of the factual situation upon which the trial court based his conclusion that appellants were liable to the shippers for the loss of the goods.

Our attention has been called to American Alliance Insurance Co. v. Brady Transfer & Storage Co., 8 Cir., 101 F. 2d 144, which involved the liability of an insurer to Brady, a carrier, on account of shipments destroyed in the terminal fire. In that case Hermann's agency for Brady appears to have been limited to pickup and delivery service and placing the shipments in the space in the terminal which was rented by Brady from Hermann and in which the shipments were stored. The evidence showed that said space and the goods there stored were in the custody and control and under the exclusive direction of one Cavanaugh, an agent of Brady.

Shipments kept in said space which were held to have been in the custody and control of· Brady, included. (1) shipments to Des Moines awaiting delivery by Hermann to the consignees, (3) outbound shipments which had been picked up in Des Moines by Hermann, and (4) shipments brought to the terminal by the shippers themselves. It may be noted that all the types of shipments in the case at bar are included in classes (1), (3) and (4) of the Brady case.

Another shipment (2) had been transported to Des Moines by Brady and was to be there transferred to a connecting trucker for carriage to a point beyond Des Moines. Brady was unable to prove said shipment was in its possession at the time of the fire for the reason that Motor Freight Terminal might have taken it from said space. They were supposed to take it ''to

whatever location in the terminal it should be placed in". Manifestly, that "location" was the space of the connecting trucker. If the connecting carrier was ready to receive such shipment it was customary to take it direct from the dock to the space of the connecting carrier. Assuming that the shipment had been taken to the space of the connecting carrier the liability of Brady, the original intra-state carrier, was terminated. In the case at bar the one incoming shipment was consigned to a Des Moines concern the same as were the shipments in class (1) of the Brady case rather than class (2) as argued by appellants.

The Brady case also held that where outbound shipments had been delivered to Brady's agent at the terminal, and presumably at Brady's space therein, possession was in Brady and the issuing of receipts to Hermann was a detail which had no necessary connection with the actual reception of the property by Brady's agent.

We think our conclusion that appellants in the case at bar had possession of the respective shipments is in accord with principles enunciated in the Brady case.

■ III. Error is predicated upon the ruling and judgment denying the carriers recovery on their cross-petition against Hermann. This is based upon the contention that Hermann was primarily liable for the loss of the goods. However, as above noted, there is support in the record for the finding that Hermann was at the time acting as agent for appellants in connection with the handling of the shipments in controversy. Therefore, his responsibility to his principals should be considered from that standpoint.

There is no claim that the fire and the resulting destruction of the shipments was caused by any negligence on the part of Hermann. The duty of an agent to his principal is to exercise reasonable care and diligence in safeguarding the affairs and property entrusted to him by his principal. Ordinarily, he is not liable to his principal for property lost without negligence on his part. Norton & Co. v. Melick, 97 Iowa 564, 66 N. W. 780.

■ There is evidence to sustain the finding of the court that liability of Hermann to these carriers, other than for negligence, was not contemplated by the parties to the agreements. Under the facts as found by the trial court we do not think appellants were entitled to recoupment from their agent, Hermann, for the liability impressed upon them.

That Hermann may have been acting in a different capacity for others is not decisive of his duties and liabilities to appellants in this case. We may not go behind the finding of the trial court that the status here was that of principal and agent.

Wherefore, the judgment of the district court holding appellants liable for the value of the shipments and dismissing appellants' cross-petition against Hermann is affirmed.—Affirmed.

MITCHELL, C. J., and RICHARDS, MILLER, HALE, SAGER, BLISS, and HAMILTON, JJ., concur.