A. C. Nelsen Auto Sales, Inc., appellant, v. L. H. Turner, appellee.

No. 47629.

(Reported in 44 N.W.2d 36)

September 19, 1950.

Kimball, Peterson, Smith & Peterson, of Council Bluffs, and Frank P. Brennan, of Avoca, for appellant.

Joe W. Turner, of Avoca, for appellee.

Mantz, J.—Plaintiff's suit is in replevin to secure possession of a certain Packard automobile which it claims to have purchased from an agent of defendant, alleging that it is an innocent purchaser thereof and that defendant is estopped to dispute such claim. This claim of plaintiff is denied by the defendant, who alleges that the purported sale to plaintiff was ineffective to divest the defendant of his title in and to said ·vehicle. The court tried the case without a jury and found for the defendant. Plaintiff appeals.

I. There is little dispute as to the facts in this case. In its findings of fact the trial court made the following statement: "The court believes that there is no substantial dispute

[in the evidence] with reference to any of the material facts in this case and its decision must rest upon an interpretation of the law and an application of the law to the facts."

From the record we will set out certain pertinent facts: Defendant owned a Packard car and wanted to sell it. He contacted the Zip Auto Sales Company, a used-car dealer in Council Bluffs, Iowa, and in company with its salesman, one O'Brien, drove to Omaha, Nebraska, to contact a certain prospective buyer. There, pursuant to agreement between defendant and O'Brien, the latter took the car with its transfer, or registration certificate, endorsed in blank, to make a sale, the defendant remaining behind. O'Brien at once drove to the place of business in Omaha of plaintiff, a used-car dealer, and represented himself as defendant (Turner) and as such sold the car for $2500. He was paid $2182 in cash, and then turned over to plaintiff the car, its keys, a bill of sale, and the transfer certificate. He then departed for parts unknown. Defendant awaited his return for several hours, then reported the car as being stolen. The Omaha police found it parked on the street on the following day and turned it over to defendant who took it back to his home in Oakland, Iowa, and has retained possession of it since that time.

Later in the opinion we will set out some of the record facts more in detail.

In its findings of fact the court deals to some extent with the effect of the registration card when the deal was made wherein plaintiff purchased the Packard automobile. In such connection the trial court stated: "* * * that at the time of placing said automobile in the hands of Frank O'Brien the defendant, L. H. Turner, signed the back of the registration card on the line which is required to be signed by the owner for the purpose of making transfer of the registration. That said signature was not acknowledged before a notary public at the time the transfer card was handed to Frank O'Brien. Although the court is of the opinion that these matters are immaterial to the decision of. the issues in this case, it is further shown by the proofs of the defendant that the signature was placed on the registration card or transfer card to avoid confusion when the purchaser signed the acknowledgment of the

930

transfer and that said transfer card was to be returned for acknowledgment by the defendant before a notary public."

While the trial court dealt with such matter to some extent, we think that its holding, in essence, was that the purported sale did not divest defendant of his title; that the claim of estoppel against defendant would not lie, and that plaintiff had not shown itself to be an innocent purchaser.

II. Replevin is tried as a law action. The appeal deals with claimed errors. In this case the jury was waived and the issues were tried to the court. The finding of the court if supported by competent evidence has the same force and effect as a verdict of the jury, and will not be disturbed on appeal where the evidences and all proper inferences therefrom, fairly considered, support it. Nelson v. Fisch, 241 Iowa 1, 39 N.W.2d 594; Crouse v. Cadwell Transfer & Storage Co., 226 Iowa 1083, 285 N.W. 623; Clark v. Krogh, 225 Iowa 479, 280 N.W. 635; Hockert v. New York Life Ins. Co., 224 Iowa 789, 276 N.W. 422; Murphy v. Callan, 199 Iowa 216, 199 N.W. 981.

In this opinion we will not attempt to follow the order of presentation as set forth in the briefs of the respective parties.

III. The first error presented by plaintiff is the action of the court permitting defendant to file "further amendment to petition", and in overruling plaintiff's motion to strike the same.

Plaintiff claims that the allowing of such amendment violated rules 101 and 88, Rules of Civil Procedure. Rule 88 relates to amendments to pleading, and when allowed; rule 101 relates to pleading special defenses.

The plaintiff's claim is that the amendment changed the issue in raising a special defense to plaintiff's petition. The trial court permitted the amendment and refused to strike it. We do not think the court erred in so ruling. Defendant, in his original answer to the petition of plaintiff, among other allegations stated: "The defendant denies the allegations of paragraph 4 of the plaintiff's petition and shows that if any transfer was made as therein alleged that the same was false, fraudulent and void."

The amendment in effect alleged that defendant had turned his automobile over to Frank O'Brien of the Zip Auto Sales

Company for the purpose only of consummating a sale with a certain represented prospective purchaser, the name or address of which was not known to defendant. The court in ruling on said motion to strike called attention to the time the various pleadings had been filed and the proceedings thereunder, and stated:

"The court feels that the amendment so offered conforms to the proof as heretofore offered, and the theory on which this case has heretofore been tried and presented. * * * That if the plaintiff feels that he has by reason thereof been taken by surprise and wants additional time in which to meet the tendered issue by the amendment this case is being tried to a judge, with a jury waived, and additional time may be given and a continuance had for the purpose of further attacking the testimony in this matter, so that the plaintiff cannot complain that advantage has been taken of any element of surprise."

In said ruling the court said:

"In the trial of the case, apparently the theory has been that the plaintiff purchased through an impostor as the agent of the defendant, Turner, and nearly all of the matters as the court concludes therefrom pleaded by the defendant in his answer have already been offered in evidence in plaintiff's main case."

In the case of Terpstra v. Schinkel, 235 Iowa 547, 17 N.W.2d 106, this court had before it the application of rule 88, R. C. P. We there held that this rule was drawn to perpetuate the authority of the trial court in the liberal allowance of amendments. See also Elson v. Nickles, 240 Iowa 292, 36 N.W.2d 343; Jaroszewski v. Allen, 117 Iowa 632, 91 N.W. 941.

This court has frequently held that the allowance of amendments to pleadings is addressed largely to the discretion of the trial court. Clough v. Adams, 71 Iowa 17, 32 N.W. 10; Cole v. Laird, 121 Iowa 146, 96 N.W. 744; Dumont v. Peet, 152 Iowa 524, 132 N.W. 955; Jensen v. Booth Motor Co., 234 Iowa 694, 13 N.W.2d 681.

According to the finding of the trial court the parties litigated along the lines suggested by the amendment. We do not

think the court abused its discretion in permitting it to stand.

IV.   Six other errors are urged by the plaintiff in support of its claim. Such claimed errors have been designated II, III, IV, V, VI, VII. In respect to said claimed errors plaintiff states all are closely related propositions of law, and plaintiff elects to submit them in one division.

We will set out the substance of said claimed errors:

Error II. The court erred in holding that a bona fide purchaser was not protected in his purchase where the true owner turns over possession of his automobile accompanied by an indicia of ownership with authority to sell the same.

Error III. The court erred in holding that when the true owner thus turns over to another an automobile for sale, and a sale is made, the true owner is not estopped to claim that the sale was ineffective.

Errors IV and V are, in substance, the same as error III—that the court erred in holding that the plaintiff was not estopped to claim that a sale thus made was not effective.

Error VI. "When one of two innocent persons must suffer by the act of a third person, he who puts it in the power of a third person to inflict the injury must bear the loss."

Error VII. "The owner of tangible personal property (automobile) who knowingly or voluntarily permits another to have possession of the automobile and certificate or other evidences of title, and who endorses same in blank, or otherwise, showing ownership in the possessor, is estopped to deny the latter's authority to sell, or otherwise deal with, the property."

The claimed errors as set forth by plaintiff present three questions for determination.

First: Was there a valid sale of the Packard car by O'Brien-(Turner) to the plaintiff?

Second: Was the plaintiff an innocent purchaser in such purported sale and entitled to be protected as such?

Third: Was the defendant estopped to question such purported sale?

V.   The determination of the above questions requires a rather detailed review of the evidence. We will set out from the record certain facts bearing directly on the matter in issue—

portions will be in narrative form—parts being quotations from the record.

L. H. Turner, defendant-appellee, lived in Oakland, Iowa. He was engaged in the insurance business. On September 23, 1948, he owned a Packard sedan, 1948 model, licensed to him in Pottawattamie County, Iowa, on May 1, 1948. He had decided to sell it and for that purpose visited various dealers of used cars, three of which were located in Council Bluffs, Iowa. On May 23, 1948, he drove the car to the Zip Auto Sales Company, a used-car dealer in that city. While there he told the lady at the desk who he was, his location, and that he wanted to sell his car. There he was introduced to a salesman of said company, one Frank O'Brien, and was given a card showing said person to be identified with said Zip Company. Turner informed O'Brien that he wanted to make a deal for the car. The price and prospective buyers were talked over. O'Brien stated that he had some people in mind who might be interested. He suggested that Turner take the car home and clean it up and come back later, and in the meantime he, O'Brien, would talk to the prospective buyers. Turner returned September 25, 1948. O'Brien met him and they drove to Omaha, stopping at 16th and Harney Streets. There was some talk between Turner and O'Brien about how best to proceed. O'Brien suggested that he drive the car alone to see a prospective buyer out on Forty-ninth Street. At O'Brien's suggestion Turner turned over to O'Brien the registration card going with the car and signed his name in pencil on the reverse side and above the printed words "Signature of previous owner." There was an agreement that O'Brien go to see the prospect and meet Turner later at the Silver taproom. Turner waited there something like two hours but O'Brien did not return. While waiting, Turner received a telephone call, purporting to come from O'Brien, explaining some delay in making a sale. He stated that there was a scratch on the fender but that he felt sure a deal could be made. About 7:40 p.m. Turner went to the police department in Council Bluffs and there reported that his car had been stolen. He described the vehicle and told them that he had left it with O'Brien, who was going to sell it for him. The Council Bluffs police notified the Omaha police that the car had been stolen. About four

p.m. the next day, Omaha police officers located the car parked at 15th and Douglas Streets. They towed it to the police parking lot and the recovery was reported to Council Bluffs and that police department reported this to Turner, who went at once to Omaha and found the car at the Omaha police department parking lot. Turner identified himself and drove the car back to Oakland. About the time Turner reported the theft to the Council Bluffs police, he phoned to the Flatiron Hotel of Omaha and was advised that O'Brien had checked out about eleven a.m. A day or two following, representatives of the plaintiff went to Oakland, met the defendant, and demanded the car, and upon his refusal this action in replevin was brought.

After O'Brien, driving the car, left Turner at 16th and Harney Streets, he drove at once to the place of business of plaintiff at 20th and Harney Streets, Omaha. Plaintiff was a used-car dealer. This was sometime before noon. O'Brien, representing himself as L. H. Turner, met some of plaintiff's employees and told them that he wanted to sell the car, and asked $2800 for it. He was offered $2500 and later agreed to accept that sum. He said that he was L. H. Turner and presented the transfer certificate which Turner had signed and turned over to him when he took the car earlier in the day. O'Brien, calling himself Turner, went into the office and came out soon saying that he would not accept $2500. He drove away but came back in twenty or thirty minutes and said that he had decided to take the $2500. When Turner (O'Brien) came into the office he had the car registration card with him. When he first talked to Mr. Nelsen the signature, L. H. Turner, was not acknowledged. When he went away he took it with him. When he returned and said he would accept the $2500 Mr. Zimmerman, credit manager of plaintiff-company, took the acknowledgment of L. H. Turner on the registration certificate, after O'Brien told Zimmerman that he was Turner and that the signature was his. We quote from the testimony of Zimmerman, on cross-examination:

"My signature appears on Exhibit 6, which is the transfer card. I put my signature on there as notary public after he told me that was his signature and Turner himself. At the time

Mrs. McDonald had the money I had not then notarized the instrument. He told Mrs. McDonald to get the money. I gave her the certificate. She gave all the papers to Miss Muenster when she came back and then when we were ready to transfer this she handed it to me and I endorsed it. After the money had been brought by Mr. Hansen to our place of business, Miss Muenster handed all of these papers to me. I did not see Exhibit 9. I did not talk to Mr. Nelsen—he was not there. All I did then to determine this was Mr. Turner was to ask him if he was Mr. Turner and to examine Exhibit 6. I did not have the bill of sale [Exhibit 9]. After he told me he was Mr. Turner, I took his acknowledgment and he told me it was his signature. It had been traced over in ink at that time. He told me he had done that. The first time I knew that the man who pretended to be Mr. Turner was not in fact Mr. Turner was when I heard about the car being stolen—someone down to the police department found out that the actual Mr. Turner had been over and got it, which was Monday morning after I found out what had happened at the police station. Before that I had no intimation of the fact that this man who pretended he was Turner was anyone else than Mr. Turner himself. Q. So far as you knew he never at any time represented to you or to anyone of the A. C. Nelsen Auto Sales Company that he was acting as agent for Mr. Turner? * * * A. He never said anything to me. Q. You never had any intimation or information about the fact that he was an agent of Mr. Turner at that time, from any source whatever? * * * A. No."

Mr. Nelsen was not there when Turner (O'Brien) returned and completed the deal. Miss Muenster, office manager for plaintiff, stated that when Turner (O'Brien) returned and said he would accept the $2500, following inquiry he told her there was a mortgage of $318 on the car in favor of the Oakland Savings Bank. She verified this by inquiry at such bank and at the recorder's office in Council Bluffs. She wrote two checks, one for $318 to the Oakland Savings Bank, and the other for $2182 to L. H. Turner. Turner (O'Brien) falsely endorsed both. The $318 check was sent to the bank at Oakland; the one for $2182, after being endorsed by Turner (O'Brien) as L. H. Turner,

was taken by an employee of plaintiff to the bank and the currency was turned over to Mrs. McDonald, office manager for plaintiff. The $2182 check when cashed was charged by the Omaha bank against plaintiff's account therein. We quote from the testimony of Mrs. McDonald:

"I recall the incident when a gentleman was in the A. C. Nelsen Auto Sales, Inc. and sold a 1948 Packard to A. C. Nelsen Auto Sales, Inc. I received $2182 in cash from Stephen Hansen. I heard Miss Muenster tell Mr. Hansen to go down to the bank and cash the check. I saw the man representing himself as Mr. Turner. After Mr. Hansen cashed the check at the bank he delivered it to me and I put it in my drawer. This man representing himself as Turner came into the office, identified himself and said he was to receive the cash on the check that had been sent down to the bank to be cashed. I went to the office to see Mr. Zimmerman and asked him if it was O.K. and he said it was. Mr. Zimmerman asked the gentleman if he was Mr. Turner. He said he was, so I counted out the money to him. That was the same man that had been in there and sold the Packard. I delivered to this man $2182. * * * I didn't meet Mr. Turner until I gave him the money, then he said, 'I am Mr. Turner. I came to get pay for this car.' This person is not the same as the defendant."

All of the witnesses who participated in the deal with the plaintiff in regard to the purchase of the Packard agree that defendant is not the same man who came there on September 25, 1948, and made the purported sale of the Packard car.

After Turner (O'Brien) got the money he turned over the car, the keys, the registration card, and the bill of sale (Exhibit 9) to the plaintiff. Following this, an employee of plaintiff drove him downtown in the Packard car, the latter saying that he wanted to go to the bank. Nothing was seen of him thereafter.

On September 27, 1948, Mr. Nelsen presented the registration certificate to the treasurer's office of Pottawattamie County, Iowa, and, following advice of the county attorney, the proper officials issued a new certificate to plaintiff, transferring to plaintiff the Packard car.

VI. It is conceded that in the dealing between plaintiff and O'Brien the latter was an impostor, masquerading under the assumed name of L. H. Turner. The trial court referred to him as a "scoundrel." The record warrants a stronger term —a criminal. The inference is clear that O'Brien followed a carefully prepared plan whereby by fraud and trickery he secured possession of the Packard car and at once sold it and decamped with the net selling price of $2182 in cash.

VII. It is the claim of plaintiff that when defendant turned over to O'Brien the car and the registration card signed in blank, he put O'Brien in a position to make a sale and that in the transaction at plaintiff's place of business the title passed to plaintiff and that thereby it was entitled to be protected.

Turner first met O'Brien as a salesman for the Zip Auto Sales Company in Council Bluffs, Iowa. The purported sale took place in the state of Nebraska, and it seems to us that Nebraska law would apply. Enfield v. Butler, 221 Iowa 615, 264 N.W. 546.

It is clear from the record that Turner and O'Brien made the trip from Council Bluffs to Omaha for the purpose of contacting a prospective buyer in that city who O'Brien claimed lived on Forty-ninth Street. There is nothing in the record to indicate that O'Brien had any authority to make a sale of the Packard car. No price was fixed and there was nothing to indicate under what terms or conditions a sale might be made. The record shows that about all O'Brien was to do was to show the car. He took the car and the registration certificate with the express understanding that he was to show the car to such prospective customer. There is nothing to indicate that defendant had any intention at that time to authorize or empower O'Brien to make a sale.

O'Brien was there as a representative of a used-car dealer in Council Bluffs. His statement to Turner in regard to showing the car to the person out on Forty-ninth Street whom he thought might be interested could hardly be calculated to create suspicion.

That O'Brien had in mind an intent and purpose to do the very thing which he did, is abundantly shown by the celerity of his actions following the time he drove the car away. That he at once drove the car from the place where he let

Turner off to the place of business of plaintiff is abundantly in the record. He left Turner at approximately ten a. m. and came to plaintiff's place of business about eleven a. m. He introduced himself and made some negotiations; got an offer for the car, started to settle, and then drove away expressing dissatisfaction with the price offered; returned in a few minutes and went on with the deal; made out the necessary papers, forged Turner's name three times, got $2182 in cash and left. He checked out of the Flatiron Hotel of Omaha before noon of that day.

From a consideration of the record it can hardly be concluded as a matter of law that defendant intended to pass title to O'Brien so as to enable him (O'Brien) to make a valid sale of the car.

When we consider the actions of O'Brien in obtaining the possession of the car and the certificate, it is clearly apparent that he did so by fraudulent methods and that the taking, in law, amounted to larceny.

While the purported sale took place in the state of Nebraska, we think that in considering the means and method whereby O'Brien induced Turner to turn possession of the Packard car over to him it is necessary to consider all of the incidents involved in such purported sale including what took place between them in Council Bluffs. The actions of O'Brien are important as throwing light upon his purpose in securing possession of the car. That his fraud and deceit got him possession of the car can hardly be questioned.

In the case of State v. Smith, 200 Iowa 338, 202 N.W. 511, our court had before it the question as to the legal effect where a person obtained possession of personal property by fraud, artifice or deceit, even with the consent of the owner. This court held this would be larceny—all other elements being present—and cited in support thereof State v. Dobbins, 152 Iowa 632, 132 N.W. 805, 42 L. R. A., N. S., 735, of which case comment will later be made. See also State v. Brown, 25 Iowa 561.

In the case of State v. Hall, 76 Iowa 85, 86, 40 N.W. 107, 108, 14 Am. St. Rep. 204, this court had before it a case where defendant was charged with larceny wherein, by a trick and

fraudulent methods, he acquired possession of certain personal property. In the opinion we said:

"Where the owner of goods parts with their possession without the purpose of parting with the property therein, and expects their return or disposition according to his direction, or expects payment for them to complete a sale thereof, the taking and conversion with the felonious intent to deprive the owner of the goods is larceny. So, if possession is obtained by a trick, artifice, or false pretense, with the felonious intent on the part of accused to convert them to his own use, he is guilty of larceny. These are familiar rules of the law. See Wat. Crim. Dig. p. 373, sec. 9; p. 377, secs. 47-53."

In the case of Cedar Rapids Nat. Bk. v. American Sur. Co., 197 Iowa 878, 195 N.W. 253, this court approved the rule announced in State v. Hall, supra. The same rule was set forth in State v. Loser, 132 Iowa 419, 104 N.W. 337. In the case of State v. Dobbins, supra, 152 Iowa, page 638, Justice Weaver discusses cases where certain actions induce a person to part with property, and holds that under certain conditions the act is felonious. Therein he cites the case of People v. Shaw, 57 Mich. 403, 24 N.W. 121, 58 Am. Rep. 372. He also cites and quotes from the case of People v. Rae, 66 Cal. 423, 6 P. 1, 56 Am. Rep. 102. He quotes from such case the following:

" 'Consent to deliver the temporary possession is not consent to deliver the property in a thing, and if a person, *animo furandi*, avail himself of a temporary possession for a specific purpose obtained by consent, to convert the property in the thing to himself and defraud the owner thereof, he certainly has not the consent of the owner. He is acting against the will of the owner, and is a trespasser.' The rule as thus stated has been frequently recognized in cases substantially like the one we are now considering, and is too manifestly just and wholesome to require further discussion at our hands."

Upon the same subject we turn to a consideration of some of the holdings of the Supreme Court of Nebraska.

In the rather recent case from that state, Snyder v. Lincoln, 150 Neb. 580, 35 N.W.2d 483, the action was that of

replevin. Therein a purported purchaser, by fraud and trickery, obtained possession of an automobile from a used-car dealer in Denver, Colorado, drove it away and disposed of it in Missouri. The purported buyer gave the Denver owner a check which had no value. He did not receive a title certificate, as provided by law. The car was later found in Nebraska and was replevined by the first owner. The trial court ruled against the first owner. The Nebraska court on appeal held that no title had passed and awarded the automobile to the Denver owner. It cited in support of its holding State v. Dobbins and State v. Hull, both supra. It will be seen that the deal started in Colorado where the automobile was secured by fraudulent methods; then it was taken to the state of Missouri where it was sold to a dealer, who later sold it to a party in the state of Nebraska. In reversing the trial court the Nebraska court held, that possession of the automobile by fraudulent methods under the record amounted to larceny and title did not pass, and further, that where a person obtains possession of property by larceny he cannot convey good title even to an innocent purchaser for value. The Nebraska court held that the statute (section 60-105, Revised Statutes, Supplement, 1947) had for its purpose the protection of ownership against fraud. Therein that court stated at page 588 of 150 Neb.: "As we view it, the applicable rule is that one obtaining possession of property by larceny cannot convey good title even to an innocent purchaser." 1 Uniform Laws Ann., Sales, section 23, page 191.

In the recent case of Nelson v. Fisch, 241 Iowa 1, 6, 39 N.W.2d 594, 597, the so-called "Title Act" (Nebraska) pertaining to the sale of automobiles is therein set out. We quote:

"That statute provides, so far as material here: 'No person * * * acquiring a motor vehicle * * * from the owner thereof * * * shall acquire any right, title, claim or interest in or to such motor vehicle * * * until he shall have had issued to him a certificate of title to such motor vehicle * * *; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title * * * for a valuable consideration. No court in any case * * * shall recognize the right, title, claim or interest of any person in or

to any motor vehicle * * * sold or disposed of * * * unless evidenced by a certificate of title * * * duly issued, in accordance with the provisions of this act.' Section 60-105, Revised Statutes of Nebraska, Supplement, 1947."

In the instant case we find nothing in the record to indicate that plaintiff made any attempt to comply with the provisions of the Nebraska statute above-quoted. True, he demanded of O'Brien a bill of sale but the one given was a forgery and did not comply with the Nebraska statute. In the Snyder case there was an analysis of other Nebraska cases dealing with the subject where property was obtained by fraud and artifice. Cases from other jurisdictions involving the transfer and registration of title to automobiles were likewise discussed. Many of them held that such statutes were the valid exercise of police powers and were to prevent fraud. In the Snyder case, supra, page 588 of 150 Neb., the court quoted from the case of Georgis v. State, 110 Neb. 352, 193 N.W. 713, as follows: "If a person obtains possession of money from the owner by fraud, with the intent to appropriate the same to his own use and deprive the owner of his property therein, the taking is larceny. While it is generally true that in larceny the taking must be a trespass against the owner's possession, yet, where fraud is practiced to obtain possession, no actual violence is necessary, for the fraud takes the place of violence." Citing Crum v. State, 148 Ind. 401, 47 N.E. 833; State v. Dobbins, supra, 152 Iowa 632, 132 N.W. 805, 42 L. R. A., N. S., 735; 25 Cyc. 40. See also State v. Hall, supra, 76 Iowa 85, 40 N.W. 107, 14 Am.St.Rep. 204.

The case of Wallich v. Sandlovich, 111 Neb. 318, 320, 196 N.W. 317, 318, was a replevin action and involved the right of possession of a Cadillac car. The jury was waived and the case tried to the court. In substance, the facts are as follows: One Mann purchased the car in Kansas City and gave his check for $2500. He was given possession, also a bill of sale. The check was refused for want of funds. Three days later Mann, calling himself Brown, sold the car to a dealer in Lincoln, Nebraska, receiving a Buick roadster and $400 in cash. He, Brown (or Mann), was introduced to defendants by an acquaintance. Brown had a bill of sale from the Atlas Motor Company of Kansas

City. The car carried a Nebraska license number which indicated a "lost" number. Brown claimed that he was a resident of Hallum, Nebraska, and that the registration certificate had been lost. Nothing was done to comply with the registration statute of Nebraska. Defendants made no inquiry other than of Brown before purchasing the car. The Nebraska court held that defendants were not innocent purchasers in good faith. It further held that the burden was upon defendants to so show. In discussing the necessity of following the statute the court said: "In case of a transfer of ownership, the parties must join in a statement thereof on the reverse side of the certificate, and forward to state authorities, who will thereupon register the car in the name of the transferee. *And it is provided the title shall not pass until the statute is complied with.* Comp. St. 1922, secs. 8365-8388." (Italics supplied.)

The case of Parr v. Helfrich, 108 Neb. 801, 803, 189 N.W. 281, 282, was a replevin action. Plaintiff resided in Denver, Colorado. He advertised his car for sale. His wife, acting as his agent, dealt with two men unknown to her. They examined the car, decided to buy, and gave her a purported certified check and took the car. The check was a forgery. The car was driven to Nebraska and sold to the defendant, who claimed to be an innocent purchaser. The trial court directed a verdict for the plaintiff. The Nebraska Supreme Court reversed and held that the matter should have been submitted to the jury. In so ruling the court said: "If the bona fides of the transaction is not conclusively shown it was a question to be determined by the jury." (Citing Schmelzel v. Leecy, 104 Neb. 672, 178 N.W. 267.) Further the court said:

· "It is well settled that when property is obtained from its owner by fraud, and the facts show a sale by the owner to the fraudulent vendee, an innocent purchaser of the property from the fraudulent vendee will take good title. The inquiry is: Did the owner intend to transfer the ownership as well as the possession of the property? If he did, there was a contract of sale. The essential thing in the passing of title to personal property is that the vendor and the vendee intend that the title shall pass, and not what induced them to have that intention."

The above case was referred to and discussed in the case of Sullivan Co. v. Larson, 149 Neb. 97, 30 N.W.2d 460, in which case cattle were bought at Sioux City, Iowa, and the buyer gave a check on a West Point, Nebraska, bank which check was dishonored. The buyer took the cattle to Fremont, Nebraska, where they were sold at auction to the defendant. He claimed to be an innocent purchaser. The court found that the defendant was an innocent purchaser, and held that under the Uniform Sales Act the plaintiff by his conduct was precluded from denying his vendee the right to make a valid sale. The court held that the Sioux City firm at the time of the sale and when they took the check intended to make a sale of the cattle. Such holding sets forth the rule that, whether the owner intended to pass title to the fraudulent buyer is a question of fact for the jury.

In the case of Enfield v. Butler, 221 Iowa 615, 264 N.W. 546, there was an issue as to the ownership of an automobile registered in the state of Missouri. The car had been involved in a collision in Iowa. In that action damages were awarded against the owner, who lived in Missouri. In its opinion this court held that the laws of Missouri governed as to the registration and that the transfer of automobiles was governed by such statutes. In the discussion the court cited the early case of McDaniel v. Chicago & N. W. Ry. Co., 24 Iowa 412. Therein this court (Cole, J.) stated that the general rule is that, in conformity with the presumed intention of the parties, the contract as to its validity, nature, obligation, and interpretation is to be governed by the law of the place of performance. Citing Story's Conflict of Laws, sections 280 and 243. Adding further: "But it is a general rule that, if the contract is void by the law of the place where it is made, it is held void and illegal everywhere."

The cited case (Enfield v. Butler, supra) in its discussion referred to the case of State ex rel. Connecticut Fire Ins. Co. v. Cox, 306 Mo. 537, 268 S.W. 87, 37 A. L. R. 1456, as to the validity of sales where there was a failure to observe the statute relating to the transfer of cars and the certificate of title. The Missouri court held that such statutes were essentially a police

regulation of the highest type and that they were passed as a general welfare safeguard against the illegal trafficking in cars and to enable the tracing of crime in relation to stolen cars. It held that the provisions of the act were mandatory and that a failure to comply would not confer title in a sale.

The Enfield v. Butler case also cited the Michigan case of Endres v. Mara-Rickenbacker Co., 243 Mich. 5, 8, 219 N.W. 719, where it was held that the sale or transfer of automobiles without delivery of certificate of title was void. The title to the Michigan statute (Public Acts, 1921, No. 46) included the following: "* * * to regulate purchase and sale or other transfer of ownership." The Michigan court quoted from its holding in Cashin v. Pliter, 168 Mich. 386, 389, 134 N.W. 482, Ann. Cas. 1913C 697, as follows: "The general rule is well-settled that, where statutes enacted to protect the public against fraud or imposition, or to safeguard the public health or morals, contain a prohibition and impose a penalty, all contracts in violation thereof are void."

See Ferris v. Langston, Tex. Civ. App., 253 S.W. 309; Hammond Motor Co. v. Warren, 113 Kan. 44, 213 P. 810; Wallich v. Sandlovich, supra, 111 Neb. 318, 196 N.W. 317.

In the case of Security Credit Corp. v. Whiting Motor Co., 98 N. J. Law 45, 47, 118 A. 695, 696, the court dealt with the necessity of an observance of the statute as to the transfer of automobiles, and held that in order to pass title such statutes must be observed. In that case it was urged that the original owner was estopped to claim title. The New Jersey court in answering this claim said: "It is difficult to see how title by estoppel can [overrule] the express requirements of the statute." See other holdings, 37 A. L. R. 1456.

In the case of State v. Joseph, 63 Utah 1, 3, 221 P. 850, 851, the question involved was whether certain acts constituted larceny. It was the claim that defendant by trick, artifice and device obtained possession of certain shares of stock belonging to a certain bank. In an opinion affirming a conviction the Utah court held that the information plainly charged that the property was obtained by falsehood and fraud and with the felonious intention by the appellant of converting it to his own use, the bank intending to part with possession only.

In its opinion the Utah court quoted from the case of People v. Berlin, 9 Utah 383, 389, 35 P. 498, as follows:

"If the owner of personal property is induced by fraudulent representations to part with its possession intending also to part with the title, the transaction cannot be larceny. But if the person receiving the possession without the title has at the time a secret intention of converting it permanently to his own use and does so without the consent of the owner, he commits the crime of larceny."

In the case of Swartz v. White, 80 Utah 150, 155, 13 P.2d 643, 645, the action was similar to that of replevin, by one who claimed to have purchased an automobile from an agent of the owner. In certain respects the fact situation is quite similar to the instant case. The alleged purchaser claimed to have bought the car from one in possession who also had the endorsed certificate of ownership and made payment thereon and received the certificate. The record shows that the seller, by fraudulent acts, secured possession of the car and the certificate. In the opinion the Utah court said: "One who acquires property by theft, or one who by fraud acquires possession of personal property for a particular purpose with the intention of appropriating the property to his own use and without an intention on the part of the owner to transfer title to him, cannot transfer a good title."

The case of Baehr v. Clark, 83 Iowa 313, 316, 49 N.W. 840, 841, 13 L. R. A. 717, was an action in replevin of a diamond which plaintiff claimed had been obtained from him by fraud and trickery and later sold and got into the hands of Clark, who claimed to be an innocent purchaser. The court sets out the rule where property is purchased by an innocent purchaser who has no notice of the fraud. Following the statement of the rule the court said:

"But this rule has no application unless there is an actual sale of the property by the alleged vendor. If one delivers property to another as a mere bailee, a purchaser from the bailee acquires no title, however innocent he may be. He has no more right to assert title to the property than if it had been stolen, and his purchase had been from the thief. The principle upon which this distinction rests is that the vendor in the cases last

supposed does not part with the title to the property, nor does he have any such intention, and the fraudulent possessor. of the property can convey no title to any third person, however innocent; for no property has passed from himself to the true owner."

The court held that the person who first obtained possession of the diamond as a prospective buyer did so with a criminal intent and that he did so with an intent from the inception to appropriate it to his own use.

In the case of Mitchell v. Porter, 123 Cal. App. 329, 11 P.2d 58, the issue was as to the ownership of an automobile, wherein a person by trickery and fraud induced the owner to part with his possession thereof; such person took the car and sold it to a third party, who claimed to be an innocent purchaser. The prospective purchaser gave his check for the purchase price and the seller advised that he would not sell until he ascertained whether the check was good. The prospective buyer asked to take the car to have it insured and for that purpose secured the "pink slip" (certificate of ownership) which the owner had endorsed in blank. The prospective buyer did not return. The check was not paid—no account being shown in the bank. A few days later the prospective buyer, representing himself as the owner, John F. Mitchell, proposed to sell the car to the defendant, Porter. A purported sale was made and in doing so the impostor forged the name of John F. Mitchell three times. A bill of sale was made out and the impostor signed the same "John Mitchell." The defendant, Porter, claimed that he was misled and that the signature as forged would mislead any person not a handwriting expert.

The trial court held for the plaintiff and on appeal this was upheld. In effect, the court held that whether or not such was the case came about through a conflict in the evidence which was addressed to the trial court. There was in the case some question of estoppel. The record showed that the certificate had been signed by the owner and that this in the hands of the impostor enabled the latter to make a sale. Dealing with the question of forgeries, the California court quoted from the language of Justice Cardozo in People's Trust Co. v. Smith,

215 N. Y. 488, 492, 109 N.E. 561, 563, L. R. A. 1916B 840, Ann. Cas. 1917A 560, wherein it was said: "Persons are not to be supposed to commit forgery, and the protection against such a crime is the law of the land, and not the vigilance of parties in excluding all possibility of committing it."

There is another matter which we think is to be considered in the case and that is the status of Turner and O'Brien in the purported sale. O'Brien was represented to be a salesman of the Zip Auto Sales Company of Council Bluffs, Iowa. The parties have argued that as between Turner and O'Brien such status was that of principal and agent. The trial court rather infers that at the inception such status existed. Plaintiff claims and argues that defendant clothed O'Brien with authority, real or apparent, to sell the Packard car. The difficulty with this claim is that at no time did O'Brien state, or plaintiff understand, that O'Brien was acting for anyone but himself. Plaintiff did not know of the existence of the real Turner until after the car had been recovered and turned back to Turner. Upon the question of agency, the rule of this state is that the apparent authority of an agent always must be determined by the acts of the principal and not those of the agent. Anderson v. Patten, 157 Iowa 23, 137 N.W. 1050, citing Wierman v. Bay City Sugar Co., 142 Mich. 422, 106 N.W. 75; Dispatch Printing Co. v. National Bank, 115 Minn. 157, 132 N.W. 2.

The record shows that when Turner and O'Brien drove the car to Omaha there was talk between them of a certain woman, a prospective customer, who lived out on Forty-ninth Street of that city, and that when Turner let O'Brien take the car it was for the specific purpose of showing the car to this prospect. Thus O'Brien took the car to show, and for no other purpose. This created a bailment between Turner and O'Brien, with O'Brien the bailee. A bailee is a species of agent. The two are sometimes synonymous. It was so held in the case of People v. Riccardi, 50 Cal. App. 427, 195 P. 448, wherein the charge was that of embezzlement. See also People v. Walker, 144 Cal. 1, 77 P. 705.

The state of Nebraska has a statute which deals with the bailment of goods. Section 28-540, Revised Statutes (1943) is as follows: "If any bailee of * * * goods or chattels shall con-

vert the same to his or her own use, with an intent to steal the same, he shall be deemed guilty of larceny in the same manner as if the original taking had been felonious * * *."

In Yost v. State, 149 Neb. 584, 31 N.W.2d 538, the bailee of certain property converted the same to his own use. He was charged with the offense, tried and convicted, and was sentenced to the state penitentiary. Defendant claimed that the evidence failed to establish the crime. The Nebraska court held that the state was required to show that the defendant was a bailee and that the evidence warranted the jury in so finding, citing State ex rel. Haley v. McCutchan, 104 Neb. 80, 175 N.W. 660, and Morrow v. State, 146 Neb. 601, 20 N.W.2d 602. In the last cited case there was a conversion by a bailee—the property converted being certain hogs. The Nebraska court held that under the statute there was no requirement that a bailment be created in any particular way. In the case of Ford v. State, 46 Neb. 390, 64 N.W. 1082, a ring was borrowed and later pawned. In Frades v. State, 131 Neb. 811, 270 N.W. 314, a bull was borrowed and later converted. See 6 Am. Jur., Bailments, section 4, page 178. Therein it is stated: "* * * the term may be said to import the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished * * *." In support of the above, cases from many jurisdictions are cited, including that of Yost v. State, supra. In the note (6 Am. Jur., page 178) there is the following quotation on the subject of bailments from the Texas case of Northcutt v. State, 60 Tex. Cr. 259, 131 S.W. 1128, 31 L. R. A., N. S., 822: "Under all the definitions given by all the books, the delivery of a particular thing out of the possession of the bailor to the bailee, upon a contract to return that article or to make some definite disposition of it, is the foundation and the fundamental object of the law of bailment." State v. Rogers, 320 Mo. 260, 7 S.W.2d 250; Commonwealth v. Polk, 256 Ky. 100, 75 S.W.2d 761; Wells v. West, 212 N. C. 656, 194 S.E. 313; 5 Words and Phrases, Perm. Ed., Bailment, page 49 et seq.; Essex v. Fife, 67 Okla. 55, 168 P. 814; Malz v. State, 36 Tex. Cr. 447, 34 S.W. 267, 37 S.W. 748.

See also Adams v. State, 138 Neb. 613, 294 N.W. 396; Rema v. State, 52 Neb. 375, 72 N.W. 474; 8 C. J. S., Bailments, section 1, page 222 et seq. A bailment is "a delivery of a thing in trust for some special object or purpose, and upon a contract, express or implied, to conform to the object or purpose of the trust." Emond v. Fallon, 56 R. I. 419, 424, 186 A. 15, 18, citing Story on Bailments (9th Ed.) 5, wherein that eminent jurist states the rule as to bailments as above set forth.

Was the defendant precluded from denying O'Brien's right to sell the car? Plaintiff argues that the defendant by his act in turning over to O'Brien the car, and the registration card signed in blank, estopped himself to question O'Brien's right to make the sale. On this point the trial court found adversely to the plaintiff. In view of our finding that plaintiff was not an innocent purchaser we do not find it necessary to pass upon the claim of estoppel. We might say, in passing, that the record fails to establish plaintiff's claim in that respect. We are unable to see, under the record, wherein Turner is precluded from claiming the car. Turner had no intent to sell O'Brien the car, and when O'Brien came to plaintiff's place of business he was a bailee and not its owner; he had no authority to make a sale. The specific understanding was that he (O'Brien) would show it to a certain definite prospect, and, if the latter desired to purchase, said prospect would later complete the deal with Turner and execute proper registration papers. Plaintiff's reliance was based upon the actions of a stranger—an impostor and a criminal.

■ ■ VIII. The trial court found that under the record the plaintiff was not an innocent purchaser of the automobile in question. The evidence upon that issue raised a question of fact. The burden would be upon the plaintiff to establish such claim. Kirk v. Madsen, 240 Iowa 532, 36 N.W.2d 757; Starr Bros. v. Stevenson & Leonard, 91 Iowa 684, 60 N.W. 217; Wallich v. Sandlovich, supra, 111 Neb. 318, 196 N.W. 317.

An innocent purchaser is defined as "one who * * * purchases property * * * without knowledge or means of knowledge sufficient to charge him in law with notice of any infirmity in law in the title of the seller * * *." 43 C. J. S. 1203. See also Nelson v. Fisch, supra; Starr Bros. v. Stevenson & Leonard,

supra; Sillyman v. King, 36 Iowa 207; Slaughter v. Qualls, Tex. Civ. App., 149 S.W.2d 651; King Cattle Co. v. Joseph, 158 Minn. 481, 198 N.W. 798.

Plaintiff claims that it was an innocent purchaser, as a matter of law. That it made a deal for the Packard car is undisputed—likewise, that it paid for said car approximately $2500; that its possession was turned over to it by one who represented himself to be the owner thereof. In the deal the registration certificate endorsed in blank by L. H. Turner was exhibited to the plaintiff. It was not acknowledged. When O'Brien presented himself at plaintiff's place of business in Omaha he met one Jones, assistant sales manager for plaintiff, and introduced himself as L. H. Turner, stating that he wanted to sell the Packard car. Jones turned him over to A. C. Nelsen, owner of plaintiff-company. After some negotiations O'Brien (Turner) and plaintiff agreed upon the price. To carry this out plaintiff had prepared and presented to O'Brien (Turner) a bill of sale purporting to sell the automobile to the Nelsen Auto Sales (plaintiff). To this he forged the name "L. H. Turner". The certificate which he presented had been signed by pencil in blank. In the presence of Mr. Nelsen, O'Brien traced the penciled name of L. H. Turner in ink. Following this it was notarized by one of the plaintiff-company as being signed by L. H. Turner. This done, there remained the matter of paying the purchase price of $2500. O'Brien (Turner) mentioned the $318 mortgage on the car due the Oakland bank and suggested that be paid, and the balance, $2182, in cash. Two checks were issued payable to L. H. Turner. To these O'Brien (Turner) forged the name of L. H. Turner, by endorsing them. The check for $318 was sent to the Oakland bank and the other for $2182, after being falsely endorsed by O'Brien (Turner), was taken to a bank, cashed, and the proceeds brought back to the place of business of plaintiff. When O'Brien (Turner) asked for it, a Mr. Zimmerman, business manager for plaintiff, inquired if he was Mr. Turner, and receiving an affirmative reply the money was paid over to O'Brien (Turner) and he departed and has not been seen since.

O'Brien (Turner) was a stranger to all who dealt with him. He came to sell a valuable car and it is somewhat significant that

when he came he had the registration signed but not acknowledged. When he presented it his attention was called to the fact that it had been signed with a pencil. He then took a pen and traced the signature. He forged the name of L. H. Turner to the bill of sale and to the two checks, thereby forging the name, L. H. Turner, three times. The record fails to show that any official of the plaintiff-company made any effort to compare these signatures with the true one of Turner on the certificate; that any inquiry was made of O'Brien (Turner) as to his business or where or when he had obtained the Packard car, and no request for him to display his driver's license. He told the salesman that he was Turner, he was passed along in the different steps of the transaction as Turner, and all accepted his word that such was his true name.

We hold that a trier of the facts might properly conclude and infer that in dealing with a total stranger there was a neglect to take proper precautions to determine the true identity of the seller as the real owner of the Packard car.

We hold that there was in the record sufficient evidence to support the trial court's finding that plaintiff was not an innocent purchaser of the automobile involved herein.

The final error to be considered is the claim of plaintiff that defendant was estopped to assert claim of ownership in the car involved in this suit. The trial court held otherwise. We have heretofore indicated that we approve such holding. However, we have heretofore held that the purported sale of O'Brien to plaintiff under the Nebraska statute was ineffective, and further that plaintiff was not an innocent purchaser. Therefore, we think it unnecessary to give further consideration to plaintiff's claim of estoppel. The judgment of the trial court is correct and it is affirmed.—Affirmed.

GARFIELD, C. J., and HALE, BLISS, MULRONEY, HAYS, WENNERSTRUM, and SMITH, JJ., concur.

OLIVER, J., concurs in result.